Paul Robert SEWARD, Respondent,

v.

**TERMINAL RAILROAD ASSN. OF ST. LOUIS, Appellant.**

No. 75498.

Supreme Court of Missouri, En Banc.

May 25, 1993.

Rehearing Denied June 29, 1993.

Robery Ely, St. Louis, for appellant.

Michael A. Forst, Roberta Hogan, St. Louis, for respondent.

HOLSTEIN, Judge.

Plaintiff Paul Robert Seward entered an opening in an abutment on Eads Bridge, fell almost twenty feet to the rail deck below and was injured. The plaintiff brought suit against defendant Terminal Railroad. The jury found damages of $1,100,000 and assessed plaintiff's comparative fault at 64%. Judgment was entered for $396,000. The defendant appealed to the Missouri Court of Appeals, Eastern District. Following opinion, this Court granted transfer. *Rule 83.03.* The judgment is reversed.

The top level of Eads bridge is a highway for automobiles. Beneath the highway is a rail deck. At the point at which plaintiff fell, the rail deck is underground, and the abutment opening through which he fell is approximately on ground level, just a few feet below the roadway. Defendant was at all relevant times the lessee of the abutments and rail deck of Eads Bridge. Eads Bridge spans the Mississippi River at St. Louis.

On February 6, 1987, plaintiff was travelling by bus from California to Illinois when he stopped in St. Louis. At 6:05 a.m., plaintiff left the bus station to seek solace by the riverside. It was still dark outside. As he approached the river, he realized he was on the roadway level of the Eads Bridge. Since he wanted to walk down to the bank of the river, he backtracked off the bridge and began walking east within a few feet of the north side of the abutment. At this point, plaintiff was traversing a rubble strewn property owned by IBT Properties and leased by St. Louis Parking Company. To his right, in the abutment, there were rectangular openings designed for ventilation for train engines passing through the tunnel on the rail deck below. Feeling a need to relieve himself, plaintiff stepped into one of these openings for privacy. The opening is about three feet high and three feet deep. Its width is six feet, ten inches. Plaintiff was not aware of the precipitous drop just beyond the opening. He stooped down; his first step took him off the IBT property onto a ledge at the base of the opening. A second step took him through the opening, resulting in his fall.

■ The primary claim raised on appeal is that the defendant was entitled to a judgment notwithstanding the verdict because plaintiff's evidence was insufficient to establish a violation of a legal duty owed

by defendant to a trespasser.[1] In determining whether the evidence is sufficient to support the judgment, it is considered in the light most favorable to the party who prevailed on the verdict. *Burnett v. Griffith,* 769 S.W.2d 780, 783 (Mo. banc 1989).

Defendant raises two issues with regard to sufficiency of the evidence. First, defendant claims that plaintiff was a trespasser and, as such, defendant owed no duty of care to him. Second, defendant claims that this was an open, obvious danger and, therefore, there was no duty toward plaintiff, even if he was not a trespasser. Because the Court finds in favor of defendant on the first issue, the second issue need not be addressed.

◼◼◼ Under Missouri law, it is the status of one going on the land of another which establishes the legal framework by which the court determines the duty of care owed by the possessor. The entrant is generally labeled a "trespasser," a "licensee," or an "invitee." A trespasser enters without consent or privilege; a licensee enters with consent but for his or her own purposes; and an invitee enters with consent and to the benefit of the possessor. *Cunningham v. Hayes,* 463 S.W.2d 555, 558 (Mo. App.1971).

◼◼◼ Contrary to plaintiff's assertion here, he was not a gratuitous licensee. It is true that one can enter property in possession of another with the status of a licensee even without express permission. Gratuitous licensees include "those taking shortcuts across property or making merely permissive use of crossings and ways or other parts of the premises; loafers, loiterers, and people who come in only to get out of the weather." *Prosser and Keeton on Torts,* § 60, at 413 (5th ed. 1984); *see, e.g., Porchey v. Kelling,* 353 Mo. 1034, 185 S.W.2d 820 (1945); *Twine v. Norris Grain Co.,* 241 Mo.App. 7, 226 S.W.2d 415 (1950). The nature of the permission which makes the plaintiffs licensees in these cases is the possessor's knowledge of and acquiescence to repeated entry. In this case, defendant was vigilant in its efforts to keep trespassers off the Eads Bridge. There is nothing on their part suggesting acquiescence. Thus, plaintiff was not a licensee, but a trespasser.

◼◼◼ The general rule is that a possessor of land is not liable for harm caused to a trespasser by failure to put land in a reasonably safe condition. *McVicar v. W.R. Arthur & Co.,* 312 S.W.2d 805, 812 (Mo. 1958). Because the classifications of trespasser, licensee and invitee and the concomitant standards of care were developed before the present industrial and urban age, some have suggested that courts may freely transcend the common law categories "when the justice of the case required." *Cunningham,* 463 S.W.2d at 559.

Notwithstanding such freewheeling language, this Court has never adopted a "justice of the case" exception to the normal rule involving trespasser liability. Not only would a "justice of the case" exception soon devour the general rule, such exception promotes uneven application and, to that extent, is unprincipled. Unless a trespasser can demonstrate that he falls within one of the clearly defined exceptions to the general rule, a possessor of land is not liable for harm caused by the failure to put his land in a reasonably safe condition. *See McVicar v. W.R. Arthur & Co.,* 312 S.W.2d at 812.

The question squarely presented, then, is whether respondent falls into an exception to the general rule of "no duty" to trespassers. The general rule is based not on the wrongful nature of the trespasser's conduct, but on the landowner's inability to foresee the trespasser's presence and guard against injury. *McVicar, supra,* at 812. Consequently, the exceptions which have developed are based on the existence of facts indicating that harm to trespassers should reasonably be anticipated by the landowner.

One such exception is that when a trespasser's presence becomes known, status

---

1. This is deduced from the statement of facts and argument. As noted by the court of appeals, the points relied on fail to indicate what actions or ruling of the trial court are sought to be reviewed, in violation of Rule 84.04(d).

as an invitee, licensee or trespasser largely disappears, and a uniform duty, that of reasonable care, is owed to each. *Restatement (Second) of Torts* §§ 336 and 337 (1965); *Cunningham v. Hayes*, 463 S.W.2d at 559. In this case, defendant did not actually know of plaintiff's presence. Thus, the exception noted in *Cunningham* is inapplicable.

 Another exception arguably present here is found in *Restatement (Second) of Torts* § 335 (1965):

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

The above provision of the restatement has never been either adopted or rejected by Missouri courts. Indeed, no Missouri case has held that a landowner is liable to an adult trespasser for a *condition* on land. However, assuming Missouri adopted the above provision of the restatement, the evidence in this case was insufficient to show that defendant knew or should have known of constant trespassing on the limited area where plaintiff fell.

John F. Meyer was Terminal Railroad's second to chief of police at the time of the accident. He testified to reports prepared by the Terminal Railroad police force regarding trespassing on defendant's property. One such report, introduced by plaintiff, related to an incident occurring about seven months prior to plaintiff's fall. An individual who had been drinking wine decided to rest on the ledge of an opening like the opening through which plaintiff fell.

While asleep, this individual rolled off the ledge and fell onto the rail deck, suffering a broken pelvis. This is the only incident of any prior intrusion onto the openings in the Eads Bridge abutments of which defendant had been informed.

Plaintiff's evidence also included other reports of trespassing on the Eads Bridge, but all at locations away from where respondent fell. There were reports of trespassers on the rail deck and on the roadway. Meyer also testified that there were likely many instances of trespassing that went unreported.

The plaintiff also presented testimony of Marion Simpson. At the time of respondent's accident, she was a parking lot attendant employed by St. Louis Parking Co. in the lot adjoining the Eads Bridge near where respondent fell. She testified that virtually every morning she saw vagrants in the area near the openings on the bridge. These vagrants were either sleeping in or next to the openings. Simpson also testified that persons leaving Kennedy's, a nearby bar, would often walk through the area near the openings where respondent fell.

This is not sufficient evidence of "constant trespassing on a limited area." The evidence of a single individual who previously fell into the tunnel is not enough to constitute "constant trespassing" under the restatement formulation. *See Lindquist v. Albertsons, Inc.*, 113 Idaho 830, 748 P.2d 414 (App.1987). The other facts within appellant's knowledge were trespassers in various areas on the Eads Bridge. For instance, defendant knew of trespassers frequenting the rail deck in the area where it crosses Second Street. In addition to being some distance from where respondent fell, the opening from which respondent fell is inaccessible from the rail deck, being twenty feet above it. Indeed, the abutment opening is inaccessible from any location on appellant's property. Before a duty arises, the defendant must have some notice that "persons constantly and persistently intrude upon some *particular place* within the land. It is not enough that he know or have reason to know that

persons persistently roam at large over his land" (emphasis added). *Restatement (Second) of Torts* § 334, comment d (1965). In the context of this case, knowledge that persons "roam at large" on Eads Bridge is not knowledge that trespassers regularly trespass the bridge by way of the abutment openings.

The testimony of Marion Simpson also does not provide evidence from which appellant could have known of such trespassing on Eads Bridge. Although her testimony indicated constant trespassing on the openings, she was not an employee of Terminal Railroad. None of her sightings were communicated to officials of Terminal Railroad.

In determining what a possessor "should know" based on "facts within his knowledge," the restatement requires a possessor "only to draw reasonably correct conclusions from data known to him, and [the possessor] is not required to exercise a reasonable attention to his surroundings or to make any inspection or investigation in regard to them." *Restatement (Second) of Torts* § 334, comment c (1965). While defendant's knowledge may be proved by circumstantial evidence, the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow so that the conclusion reached is not the result of guesswork, conjecture or speculation. *Wells v. Goforth*, 443 S.W.2d 155, 159 (Mo. banc 1969). Only by imposing a duty on defendant to investigate and speculating as to the results of the investigation can the requisite knowledge of constant trespass of the abutment openings be attributed to defendant.

Other exceptions found in the restatement might arguably support plaintiff's right to recovery. Among these are *Restatement (Second) of Torts* § 369 (possessor of land may be liable for a condition near a public roadway if encountered by a child); § 370 (possessor may be liable for injuries arising from an artificial condition close to land in possession of another where it involves an unreasonable risk of harm to one lawfully using adjacent land); § 368 (possessor liable where an artificial condition creates an unreasonable risk to persons accidentally brought into contact with the condition while travelling on a highway or foreseeably deviating from an "ordinary course of travel" on a highway). Here the defendant was not a child. He was not lawfully using the land controlled by the St. Louis Parking Co. He was not travelling on a highway or deviating from a highway in the ordinary course of travel when he entered the opening in the Eads Bridge abutment. Thus, none of these exceptions to the general rule of "no duty to trespassers" is applicable.

The Court concludes that the plaintiff has failed to establish that his status was anything other than that of a trespasser, and he has failed to show that he falls within any one of the exceptions to the general rule that the defendant owes no duty to trespassers for a dangerous condition on its land. The judgment is reversed and the cause remanded to the trial court for entry of judgment notwithstanding the verdict in favor of Terminal Railroad.

All concur.