Vernon B. POLITTE, Jr.,
Plaintiff/Appellant,

v.

UNION ELECTRIC COMPANY,
Defendant/Respondent.

No. 66372.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 6, 1995.

SMITH, Presiding Judge.

Plaintiff appeals from the granting of a motion for directed verdict at the close of plaintiff's opening statement in a personal injury case arising from plaintiff being severely shocked while climbing upon one of defendant's high voltage electrical transmission towers. We affirm.

On the Friday prior to trial the court and parties had a discussion concerning the case. The court expressed at that time serious concern about the submissibility of the case. At trial the following week plaintiff waived a jury and proceeded with a lengthy opening statement. At the conclusion of the opening statement the court granted defendant's motion for directed verdict.

The opening statement asserted the following facts. In May 1984, plaintiff, then 27, was playing frisbee on property adjacent to high voltage electric lines maintained by Union Electric. The lines were supported by towers located wholly on defendant's land which it owned in fee. The frisbee became stuck on one of the towers and plaintiff climbed the tower to retrieve it. In order to climb the tower the plaintiff climbed over a sign which read "Danger. Electric Wires. Keep off." Plaintiff knew the lines carried electricity, were high voltage and that he should not touch them. Plaintiff had climbed electric towers in the area on numerous prior occasions, but not within four years.

A metal arm supporting wires extends from the body of the tower and hangs over a wooden pole alongside the tower which holds other transmission wires. The metal arm is approximately 43 feet above the ground. Plaintiff moved from the center post of the tower onto the metal arm. Witnesses heard a boom, saw a flash and saw plaintiff fall from the arm down to the vicinity of the wooden pole and onto a fence below. He suffered severe injuries from the shock and fall.

Plaintiff's expert would have testified that plaintiff was injured by a "flashover or arcing type disturbance" and had to have been within six inches of the high voltage lines for this to occur. The expert was also prepared to testify that Union Electric knew or should have known about the climbers and foreseen the accident. He would further testify that the warning sign was inadequate and that defendant's maintenance of the tower violated the National Electric Safety Code, and that defendant did not adequately protect the tower from climbers.

Plaintiff also intended to call his brother as a witness who would have testified to numerous occasions when he and others climbed the tower, placed things at the top of it, and were, on occasion, observed by defendant's employees who said nothing to discourage them from climbing the towers in that vicinity. None of the incidents to which the brother would testify had occurred within four years of plaintiff's injury. Another witness would testify that "everyone" in the area climbed towers and he had done so "quite a few times before this accident". No time frame for this climbing was stated nor was it indicated that any Union Electric employees

were aware of that witness' or "everyone's" climbing.

■ Generally, courts are reluctant to direct a verdict at the close of plaintiff's opening statement. *Brouk v. Brueggeate,* 849 S.W.2d 699 (Mo.App.1993) [6]. It is only appropriate when it affirmatively appears that the whole of plaintiff's case has been fully and completely set forth in the opening statement and it clearly appears, as a matter of law, that proof of the recited facts, together with all reasonable inferences in favor of plaintiff, would not result in a submissible case. *Id.* at [7, 8].

■ The judge's comments contained in the record before us indicate that the action of the plaintiff in waiving a jury was premised on the court's indication the previous week that it would grant a directed verdict at the close of the opening statement and the desire of all involved to avoid the inconvenience and expense of empaneling a jury under those circumstances. The action of the trial court was not therefore unexpected and plaintiff had a full opportunity to set forth all of the evidence which he believed he could marshall in support of his cause of action. After the conclusion of the opening statement and the motion for directed verdict the court again gave the plaintiff an opportunity to add anything else before granting the motion. Plaintiff raises as error here the court's failure to give counsel "a specific opportunity . . . to correct or add to his opening statement after defendant's motion for directed verdict was filed and before the motion was granted by the trial court". Factually, he was given such an opportunity. He makes no suggestion here of any additional evidence he could have referred to in order to make a submissible case. It is not the duty of the trial court to suggest that the statement be amplified or what amplification is necessary. *Swindler v. Butler Manufacturing Company,* 426 S.W.2d 78 (Mo.1968) [6, 7]; *Brouk, supra* at [12]. We find no merit to this claim of error.

■ When a plaintiff sues a possessor of land for injuries arising out of an unreasonably dangerous condition on that land, the standard of care owed by the defendant is defined by the relationship between the possessor of the land and the plaintiff. *Harris v. Niehaus,* 857 S.W.2d 222 (Mo. banc 1993) [4, 5]. Plaintiff here was concededly a trespasser on defendant's tower. It is the general rule that a possessor of land owes no duty to a trespasser to put his land in a reasonably safe condition. *Seward v. Terminal Railroad Assn. of St. Louis,* 854 S.W.2d 426 (Mo. banc 1993) [5]; *Wyatt v. Kansas City Terminal Ry. Co.,* 229 Mo.App. 179, 74 S.W.2d 51 (1934) [5–7]. Trespassers take the premises, for better or for worse, as they find them, assuming the risk of injury from their condition, "the owner being liable only for hidden dangers intentionally placed to injure them or for any willful, illegal force used against them". *Wyatt, supra.* This is the rule whether the trespasser is known or unknown. As to known trespassers the possessor is commonly required to exercise ordinary care under the circumstances for the trespassers' safety as to any *active operations* the possessor may carry on. *McVicar v. W.R. Arthur & Company, Inc.,* 312 S.W.2d 805 (Mo.1958) [2–5]. The difference in duty of the possessor to known *vis a vis* unknown trespassers has traditionally existed only in the affirmative activities conducted on the premises not on the condition of the premises. Plaintiff here sustained his injury because of the condition of the premises not from affirmative activities conducted thereon. Under traditional law defendant owed no duty to plaintiff to make the premises safe, whether defendant had knowledge of frequent trespassing or not.

■ In *Seward, supra,* the court addressed a case involving a trespasser injured by a condition of the premises. While acknowledging the traditional rule, the court addressed at length the issue of whether defendant had knowledge of frequent trespassing on the property and concluded that plaintiff was not a known trespasser. We do not interpret *Seward* as rejecting the traditional rule. However, in an abundance of caution, we examine plaintiff's contention that the evidence would have established his status as a known, or at least anticipated trespasser, and therefore, his contention that, some different rules apply.

Plaintiff relies upon exceptions to the general rule found in Sections 335, 336, and 337 of the Restatement (Second) of Torts. Sections 336 and 337 impose a duty of reasonable care to known trespassers. They apply only if the possessor actually knows that the plaintiff is on his property at the time of the injury. *Seward, supra* at [5]. There is no contention that defendant actually knew plaintiff was present on its property at the time of the accident. Those sections are inapplicable.

Plaintiff relies upon § 335 which provides: A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious [ ] bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

It is questionable that Missouri courts have adopted § 335. *Seward, supra* at [6–9].[1] In any event, it does not apply to this case. First, the section requires that the possessor knew or should have known of constant intrusion on the land. The only evidence of that set forth in opening statement involved intrusions at least four years prior to plaintiff's injury. There was nothing offered of intrusions near in time to the injury.

Second, the intrusions set forth in the opening statement did not involve the metal arm which is where plaintiff received his injury. In *Seward* the court emphasized that knowledge that persons "roam at large" on Eads Bridge is not knowledge that trespassers regularly trespass the bridge by way of the abutment openings. Plaintiff's contention of ignorance of the danger of arcing and defendant's failure to warn him of that specific danger required that he establish defendant's knowledge that people regularly trespassed on the portion of defendant's property where arcing could cause injury. There was no evidence proffered that arcing could cause injury from the center post of the tower and no evidence proffered that anyone had ever trespassed on the metal arms or that defendant had knowledge, actual or constructive, of such trespassing.

Third, there is nothing to warrant a conclusion that defendant would believe trespassers would not discover the danger inherent in the tower, i.e., electricity. Plaintiff knew the tower contained high voltage electrical wires and that fact was readily apparent to any observer. It is common knowledge that electricity is dangerous and can cause serious injury or death. Plaintiff knew it to be.

Finally, defendant did not fail to exercise reasonable care to warn trespassers of the danger. Plaintiff climbed over a sign which warned of danger, i.e., electrical wires and advised him to keep off. Plaintiff chose to disregard the warning and was injured by the electrical wires. The opening statement and the inferences to be drawn therefrom did not establish that plaintiff could make a submissible case. The court properly granted the directed verdict.

Judgment affirmed.

PUDLOWSKI, J., concurs in result.

WHITE, J., concurs.

---

1. It is particularly questionable that the section has applicability to electrical transmission companies whose duty is to insulate or isolate the lines. Plaintiff makes no contention before us that defendant failed to isolate its lines. They were on property owned by defendant suspended from a tower forty feet in the air. "Isolation" means placing the wires "beyond the range of contact with persons rightfully using such streets, highways, or places, and to exercise the utmost care to keep them so." *Burk v. Missouri Power & Light Company,* 420 S.W.2d 274 (Mo. 1967) [2–5]. People climbing the tower without defendant's consent are not "rightfully" using the "place". As to plaintiff the lines were isolated.