**Chad E. COCHRAN, Respondent,**

v.

**BURGER KING CORPORATION, Appellant.**

**No. WD 52110.**

Missouri Court of Appeals, Western District.

Submitted Aug. 27, 1996.

Decided Dec. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application to Transfer Denied Feb. 25, 1997.

)

**360**

James F. Duncan, Kansas City, for appellant.

Mark T. Kempton, Sedalia, for respondent.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

Burger King Corporation appeals from a judgment, after jury verdict, awarding Chad Cochran $1,426,971.45 in a premises liability action. Mr. Cochran was severely injured when he attempted to climb a brick wall on one side of an area enclosing a dumpster at one of Burger King's restaurants. Among the assignments of error raised by Burger King is the contention that the trial court erred in denying its motions for directed verdict because Burger King owed no duty to Cochran to keep the area reasonably safe for his attempt to climb the wall. Because we agree that Cochran had no implied permission to climb on the wall in question, we hold that Burger King had no duty to protect Cochran from defects in the wall. We reverse the judgment of the trial court.

In reviewing the denial of a directed verdict, the evidence is viewed in the light most favorable to the plaintiff to determine whether a submissible case was made. *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. banc 1994). "Submission is proper where every fact essential to liability is supported by legal and substantial evidence." *Williams v. Preman*, 911 S.W.2d 288, 300 (Mo.App.1995). We will reverse the trial court decision to submit the case only if it can be said that, as a matter of law, plaintiff has no right to recover. *Friend v. Holman*, 888 S.W.2d 369, 372 (Mo.App.1994).

On May 8, 1994, Chad Cochran, who resided in Lawrence, Kansas, was in Warrensburg, Missouri, visiting a friend. His friend's house was located across the street from a Burger King restaurant. Sometime around 2:00 a.m., Cochran left the friend's house on foot to go to a nearby Hardee's restaurant to get something to eat. Cochran cut through the parking lot of Burger King, which was closed, in order to reach Hardee's, which was

open. There was no activity inside of the Burger King restaurant, and all of the exterior lights had been turned off. After obtaining some food at Hardee's, he returned to his friend's house, again taking a short cut through the Burger King lot. Within half an hour, Cochran, decided to make a second trip to Hardee's. When he reached Hardee's the second time, Cochran discovered that he did not have his money with him. He started back through the Burger King lot once again.

On his way back to the house, Cochran decided to check to see if there was any food in the dumpster at Burger King. The dumpster was shielded on three sides by brick walls which were just short of eight feet in height. The fourth side of the dumpster enclosure was bounded by a set of wooden hinged gates. The area was dark. Cochran entered the enclosure. Cochran, who was intoxicated at the time, does not specifically remember checking the dumpster for food. He remembers "turning around and taking a hop and grabbing the top of the wall" in an attempt to climb the wall. When asked at trial why he wanted to climb on top of the wall, he answered, "I don't know." Cochran, who was about six feet tall, took a "short hop," and grabbed the top of the wall, in an effort to mount it. Cochran does not remember his actions specifically. It is not clear whether he put his feet against the wall, while suspending his weight and attempting to pull himself up. In any event, as he attempted to climb the wall, the wall collapsed, severely injuring Cochran. Cochran was able to drag himself to the street, where he flagged a passing police officer. He informed the police that he attempted to climb the wall and it fell on him. As a result of his injuries, Cochran's left thumb and left leg were amputated.

The wall was in a weakened condition at the time Cochran attempted to climb it. On April 5, 1994, a little more than a month before Cochran's accident, a trash truck driver had damaged the wall. Thereafter, there was visible evidence of damage to the structural integrity of the wall. The top portion of the wall was apparently no longer secured to the bottom part. The restaurant's manager recognized that the condition of the wall

presented a potential danger. The manager and another employee pushed on the wall in an effort to determine the degree of instability. The employee felt the wall move when they pushed. The manager decided not to tear down the wall. The employees believed the wall was not safe, and took care not to stand near it when emptying trash. The employees were told not to touch the wall. The wall had not been repaired by the time Cochran attempted to climb it.

Cochran brought an action against Burger King, seeking recovery for his injuries on the ground that the restaurant had breached its duty to keep the premises in a reasonably safe condition, or to warn of the dangerous condition. At the conclusion of the evidence, the jury found that Burger King was 80% at fault for Cochran's injuries and Cochran was 20% at fault. Actual damages were assessed at $412,000. Cochran obtained a verdict of $329,600 in compensatory damages. The jury awarded Cochran one million dollars in punitive damages. Cochran was also awarded pre-judgment interest. The total judgment against Burger King amounted to $1,426,971.45.

On appeal, Burger King argues that the trial court erred in denying its motion for directed verdict at the close of the evidence and in submitting the case to the jury. Burger King argues that, as a matter of law, it owed no duty to Cochran to keep its wall safe for Cochran to climb.

In Missouri, the duty owed to a plaintiff in a premises liability action generally depends upon the status of the plaintiff at the time of his injury. *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995). The applicable standard of care under a given set of facts is a matter of law. *Id.* There are three broad categories of plaintiffs recognized in premises liability cases: (1) trespassers; (2) licensees; and (3) invitees. *Id.*

All entrants to land are trespassers until the possessor of the land gives them permission to enter. All persons who enter a premises with permission are licensees until the possessor has an interest in the visit such that the visitor "has reason to believe that the premises have been made safe to receive him." 65 C.J.S. *Negligence,*

§ 63(41), 719. That makes the visitor an invitee. The possessor's intention in offering the invitation determines the status of the visitor and establishes the duty of care the possessor owes the visitor.

*Carter*, 896 S.W.2d at 928.

Cochran argues that the issue really should be one of reasonableness and foreseeability under all of the circumstances rather than an issue of the specific category of entrant into which he fits. His argument is reflective of the movement among some jurisdictions to eliminate traditional status categories of entrants upon property, particularly as to the difference between licensees and invitees. *See Id.* at 929; *See also* Annotation, Landowner Liability—Injured Party Status, 22 A.L.R.4th 294 (1983). In *Carter*, however, the Supreme Court made clear its intention to retain the traditional common law distinction between invitee and licensee. *Id.* The court specifically rejected the "reasonable care under the circumstances" test, which the court described as "amorphous." *Id.* We note also that in *Seward v. Terminal R.R. Ass'n*, 854 S.W.2d 426 (Mo. banc 1993) the court clearly adhered to the trespasser category in determining the issue of duty of the defendant. Consequently, we conclude that the common law categories must be applied to the analysis in determining the duty of Burger King.

Cochran suggests that, if we are to be guided by the status categories, we must regard him as a licensee, and argues that the duty owed to him that night was the duty to make safe the dangers of which Burger King was cognizant. Cochran argues correctly that the evidence shows that Burger King was aware of the fact that the wall was weakened, and could present a serious danger to anyone trying to climb the wall. Cochran is also correct that the duty owed a licensee is a duty to exercise ordinary care to protect against known dangers. *Carter*, 896 S.W.2d at 928. The issue, then, is whether plaintiff Cochran established that he was a licensee, and thus the beneficiary of a duty to make the wall reasonably safe for his activities, at the time the incident occurred.

■ We agree that Cochran had the status of "gratuitous licensee" when he crossed the Burger King parking lot. A person entering to use a short-cut is adjudged a licensee. *Porchey v. Kelling*, 353 Mo. 1034, 185 S.W.2d 820, 823 (1945).

[O]ne can enter property in possession of another with the status of a licensee even without express permission. Gratuitous Licensees include "those taking shortcuts across property or making permissive use of crossings and ways or other parts of the premises; loafers, loiterers, and people who come in only to get out of the weather."

*Seward v. Terminal R.R. Ass'n. of St. Louis*, 854 S.W.2d 426, 428 (Mo. banc 1993) (quoting Prosser and Keeton on Torts, § 60, at 413 (5th ed.1984)). The Burger King lot is open to the public. The restaurant can readily anticipate that people will pass through the property, even at times when the restaurant is closed. There was no indication that Burger King did anything to discourage such traffic. Cochran could reasonably assume that he enjoyed a license to cross the premises.

■ Burger King argues, however, that even if Cochran was a licensee while crossing the premises, he was not one at the time the wall collapsed. Burger King is correct that the deviation from the scope of an implied license or invitation reduces the status of the visitor and, correspondingly, the duty of the possessor. *Taylor v. Union Elec. Co.*, 826 S.W.2d 57, 60 (Mo.App.1992). "Deviation from an invitation occurs when the entrant acts in a manner inconsistent with the scope of an express or implied invitation, thereby demonstrating a change in relationship between that person and the possessor." *Id.* One can commit the tort of trespass either by unauthorized entry on land or by exceeding the scope of any license to enter upon the land. *McNamee v. Garner*, 624 S.W.2d 867, 868 (Mo.App.1981). Accordingly, the change in the status of the entrant affects the duty of the landowner. For example, in *Walters v. Markwardt*, 361 Mo. 936, 237 S.W.2d 177 (1951), the plaintiff went on the property of an unlighted gas station after dark and fell into a six-foot-deep pit which the station operators used in connection with servicing cars. The court dealt

first of all with the plaintiff's contention that he was an invitee, noting that 1) he did not allege he was a customer or potential customer; 2) he went there in darkness; 3) the station was closed. The court then acknowledged that plaintiff could have been a licensee to the extent that he used the driveway and walkway simply to cross the property. The court then noted that plaintiff was not using the property just to travel across it, but was "going beyond such use" to reach a restroom in the filling station building. The court affirmed the trial court's dismissal of the action. *Id.* 237 S.W.2d at 179.

In *Gruetzemacher v. Billings,* 348 S.W.2d 952 (Mo.1961), the plaintiff entered a neighboring yard to rescue a child whose foot was caught at the top of a fence. After she completed the rescue of the child, the plaintiff, in attempting to return to her own yard, chose to walk directly through a flower bed rather than walk around it. The grass in the flower bed was high, and plaintiff did not see a stake, which caused her to fall, resulting in injury. *Id.* at 954. The plaintiff argued that she was an invitee on the property and that the property owners breached a duty owed to her. The court found it unnecessary to determine whether the plaintiff was an invitee, holding:

> [W]e find it unnecessary to determine whether plaintiff offered sufficient evidence to sustain a finding that she had acquired the status of an invitee at the time she entered upon defendants' premises because, even if the plaintiff occupied the status of an invitee when she entered defendants' premises, she did not occupy that status at the time she was injured and the evidence fails to show any breach of any duty owed by defendants to plaintiff, or that defendants were negligent with respect to her.

*Id.* at 956. The court stated that the owner's liability for the condition of the premises is only coextensive with the invitation. The court said that the plaintiff must show not only that she had an invitation to enter the premises, but also that at the time of the injury *"she was in that part of the premises into which she was invited to enter, and was using them in a manner authorized by the invitation, whether express or implied."* *Id.* at 958 (emphasis in original). The court affirmed the order of the trial court granting judgment to defendant notwithstanding the jury's verdict for plaintiff. The court stated that "[p]laintiff was not using the area in the manner 'it obviously was intended to be used' at the time she fell and was injured." *Id.* at 957.

In *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156 (Tex.App.1995), the issue was whether a Jack–in–the–Box restaurant was entitled to judgment as a matter of law in an action brought by a sixteen-year-old who entered a dumpster enclosure behind the restaurant, where she was sexually assaulted. The plaintiff was an employee of the restaurant who had clocked out for the evening, and was waiting for a ride. The employee had permission to wait in the employee break room. Another off-duty employee invited her to follow him to the dumpster enclosure. The restaurant discouraged employees from entering the dumpster enclosure in the evening, although there was evidence employees nevertheless occasionally violated the policy. The Texas court determined that because the plaintiff departed from the part of the restaurant as to which she was a licensee to "another part of the premises without license or invitation, her status at the time and place of the alleged injury decreased to that of a trespasser."[1] *Id.* at 163.

In this case, everything depends on whether Cochran was still a gratuitous licensee when, after diverting to the dumpster area, he attempted to climb the wall. The issue of duty is an issue of law for the court. *Carter v. Kinney,* 896 S.W.2d 926, 928 (Mo. banc 1995). Burger King argues that Cochran had deviated from the purpose for which he entered the property in the first place. According to Burger King, he re-

---

1. In spite of the fact that the court determined that the plaintiff was a trespasser at the time of her injury, the court nevertheless reversed the summary judgment and remanded the case because there was evidence of gross negligence on the part of the management, including evidence that the management failed to warn her that her alleged assailant had made remarks about "messing with a sixteen year old."

tained his status as a gratuitous licensee only as long as he was proceeding across the property with the simple purpose of crossing it. Burger King argues that when Cochran chose to enter a dark, enclosed dumpster area at 2:00 or 2:30 in the morning, when the restaurant was obviously closed, and all exterior lights were off, his legal status was reduced to that of a trespasser.

There was no evidence that the dumpster area had been opened to the public, although there was evidence that the public, whether customers or not, had occasionally used the dumpster to dispose of their trash. The day before plaintiff's injuries, an unidentified person was found looking around within the dumpster area. On another occasion, a person who had robbed the nearby Hardee's had hidden in the Burger King dumpster. The manager was aware that sometimes homeless persons might enter the dumpster enclosure. There were no signs warning people to stay out of the dumpster area. The area was not lighted, although defendant corporation had expressed a policy or recommendation to individual stores about lighting such areas.

The dumpster is on the premises for the use of Burger King, of course. While some customers and non-customers have utilized the dumpster to dispose of trash, there is no evidence that Burger King used the dumpster as a business attraction, or offered it as an amenity for its customers. The dumpster was essentially shielded from the view of customers. While the main purpose of shielding the dumpster may have been aesthetic, an additional effect of the walls was to discourage use by the public.

There is no evidence that a reasonably prudent person would have believed there was implied permission to enter the dumpster area, or would have believed that Burger King would have taken precautions to make the area safe in the middle of the night. Nevertheless, it is not necessary to decide the precise issue of whether Cochran retained his licensee status when he entered the dumpster area because we believe there is a further distinction between entering the dumpster area and attempting to climb the wall. The evidence does not establish that Burger King should have been required to

anticipate that someone would try to climb the eight-foot-high wall when the restaurant was closed, and the area was darkened. The effort to scale the wall was entirely unrelated to the use of the dumpster. The dumpster was fully accessible without climbing the wall. Not even Cochran could think of any reason that he should have been trying to climb the wall. In view of the fact that Burger King did not know of Cochran's presence on the premises, we know of no authority for the proposition that his intoxication entitles him to any special protection. While Cochran's presence on the premises for a short cut to Hardee's could have been anticipated, we believe that Burger King was not required to anticipate his attempt to climb the wall.

▮ As a general rule, a possessor of land owes no duty to a trespasser to put the land into a reasonably safe condition. *Politte v. Union Elec. Co.*, 899 S.W.2d 590, 592 (Mo.App.1995). With only limited exceptions, none of which have been pleaded or proved in this case, a trespasser takes the land "for better or for worse" and assumes the risk of injury from the condition of the premises. *Id.* See Restatement (Second) of Torts §§ 333–339 (1965). While the possessor of land may not intentionally set booby traps with the design of causing injury, the possessor owes no duty to adult trespassers for conditions on the premises. *Wyatt v. Kansas City Terminal Ry. Co.*, 229 Mo.App. 179, 74 S.W.2d 51 (1934). "Indeed, no Missouri case has held that a landowner is liable to an adult trespasser for a *condition* on land." *Seward v. Terminal R.R. Ass'n*, 854 S.W.2d at 429 (emphasis in original). This is not a case involving an "active operation" by Burger King. *See, e.g., McVicar v. W.R. Arthur & Co., Inc.*, 312 S.W.2d 805 (Mo.1958) (duty to protect a discovered trespasser in a position of peril due to an active operation). Nor was Burger King on notice that there were frequent nocturnal visitors to the dumpster area, who constantly climb on the walls. *See Politte*, 899 S.W.2d at 592; *Seward*, 854 S.W.2d at 429; Restatement (Second) of Torts Section 335 (1965). Nor is this a case involving an "attractive nuisance" injury to a child. *See, e.g., Salanski v. Enright,*

452 S.W.2d 143 (Mo.1970). Nor was there evidence that the level of danger posed by the wall rose to the level of danger posed by extremely hazardous material, such as live explosives. *See, e.g., Paisley v. Liebowits,* 347 S.W.2d 178, 182–83 (Mo. banc 1961).

In *Seward,* the plaintiff fell through an opening in a bridge abutment which contained ventilation openings for trains which passed underneath. Plaintiff had been traversing an area near the bridge when he decided to step into one of the ventilation openings in order to relieve himself. Apparently the area was not lighted, and there were no warning signs. Plaintiff could not observe the fact that there was a dangerous drop to the train deck below, and when plaintiff moved through the opening, he fell to the deck, suffering serious injury. Plaintiff obtained a judgment in the trial court which the defendant landowner appealed. In that case, the Supreme Court regarded plaintiff as a trespasser, and the court iterated that no duty was owed to plaintiff as a trespasser, unless plaintiff could establish that he fit within an exception to the no-duty rule. Noting that, in spite of the frequent trespassers in the area, only one person had previously fallen into the opening, the court stated that plaintiff did not show that this was a case of "constant trespassing on a limited area," an exception recognized in Restatement (Second) of Torts Section 335 (1965). Although there was also evidence that others, not employed by defendant, had observed that people often walked or slept near these openings, there was no evidence that defendant had notice, except as to the one instance of the previous injury, of people going into these dark openings. The court said that knowledge that people "roam at large" on the bridge was not the same as knowledge that trespassers "regularly trespass the bridge by way of the abutment openings."

▇▇▇▇ Because liability to trespassers is an exception to the general rule of nonliability, any exception to the general rule should be specifically pleaded. *Adolphsen v. Hallmark Cards, Inc.,* 907 S.W.2d 333, 338 (Mo.App. 1995). In this case no exception was pleaded. Plaintiff proceeded on the theory that status categories were not applicable, and in the event that the categories were applicable, plaintiff's status was that of a licensee. As we have seen, the categories are clearly applicable, in view of the decision in *Carter.* Also, while we agree that plaintiff was a licensee while crossing the property, we do not agree that plaintiff retained his licensee status in attempting to climb the wall in the dumpster area. There was no evidence that any visitor had attempted to climb the wall before, day or night, or had interacted with the wall in any way. It certainly was not a case of "constant trespassing on a limited area." *Seward,* 854 S.W.2d at 429. If no duty was owed to the trespassing plaintiff in Seward, then no duty was owed to the plaintiff in this case.

▇▇▇▇ The rule of non-liability to trespassers is not based on a notion that trespassers are bad people who deserve whatever evil may befall them. Rather, the reason for the rule is to recognize that the owner or controller of property is entitled to assume that members of the public will not interfere with those portions of the property as to which there is no implied invitation. The intrusion by the trespasser is not to be anticipated, as a matter of law. *McVicar,* 312 S.W.2d at 812; See Comment, Restatement (Second) of Torts § 333 (1965). The alternative is to require land owners to post warnings of all property defects and dangers, even defects in those portions of the property as to which they do not reasonably expect any interference. *See Romine v. Koehn,* 730 S.W.2d 558, 560 (Mo.App.1987).

The fact that the jury in this case regarded Burger King's actions as sufficiently wanton to warrant the imposition of a punitive judgment does not affect the analysis. The basic issue is whether there was any duty owed to Cochran. If there was no duty to warn as to the condition of the property, then any perceived recklessness on Burger King's part is immaterial.

Considering the evidence in the light most favorable to plaintiff, the facts in this case do not show that Burger King had a duty to make the wall safe for plaintiff to climb, or a duty to warn plaintiff that the wall was unstable. Burger King Corporation is entitled to judgment as a matter of law.

The judgment is reversed and the case is remanded to the trial court for entry of judgment notwithstanding the verdict in favor of defendant Burger King Corporation.

All concur.