**Angela M. MOTHERSHEAD, personal representative of the Estate of Jedidiah C. Mothershead, and Angela M. Mothershead, individually, Appellant,**

v.

**GREENBRIAR COUNTRY CLUB, INC., Kay–Bee Toy and Hobby Shops, Inc., and Intex Recreation Corporation, Respondents.**

No. 74270.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 22, 1999.

Ronald E. Jenkins, Paula Colman, Jenkins & Kling, P.C., St. Louis, for appellant.

John A. Michener, Evans & Dixon, L.L.C., Peter B. Hoffman, Peter W. Gullborg, Kortenhof & Ely, P.C., St. Louis, for respondent.

PAUL J. SIMON, Presiding Judge

Angela M. Mothershead (plaintiff), mother of Jedidiah C. Mothershead (decedent), appeals from the trial court's granting of summary judgment in favor of defendants, Greenbriar Hills Country Club, Inc. (Greenbriar), and Intex Recreation Corporation (Intex) in an action for wrongful death of her sixteen year old son resulting from a snow sledding accident.

On appeal, plaintiff contends that the trial court erred in (1) granting Greenbriar's motion for summary judgment because it (a) disregarded pleadings setting forth undisputed facts that Greenbriar had knowledge that persons regularly entered the premises to ride sleds in a particular area; (b) disregarded Missouri law holding that, by virtue of Greenbriar's knowledge, decedent was either an invitee or a trespasser to whom Greenbriar owed a duty; and (c) disregarded pleadings setting forth disputed facts that Greenbriar breached its duty to decedent as an invitee or a trespasser, that a dangerous condition existed at the twelfth hole, that Greenbriar had knowledge of this condition, that the condition was not open and obvious to decedent, that Greenbriar knew or should have known it was not open and obvious, and that Greenbriar failed to use ordinary care to remove, remedy, or warn of the dangerous condition at the twelfth hole; (2) granting summary judgment in favor of

Intex because, as a matter of law, it was for a jury and not a judge to determine whether the Sno-tube was in a defective condition and unreasonably dangerous when put to its anticipated use and whether the defective design of the Sno-tube was the proximate cause of decedent's death; and (3) that the undisputed facts set forth in the pleadings demonstrate that, as a matter of law, Intex failed to provide an adequate warning of the Sno-tube's dangerous characteristics; moreover, jury questions remained concerning whether an alternative warning would have changed the decedent's behavior and whether the lack of an adequate warning was the proximate cause of the decedent's demise. We affirm.

Plaintiff's motion to strike Greenbriar's and Intex's points relied on as being in violation of Rule 84.04(d) was ordered taken with the case. Although we find that the points do not comply with Rule 84.04(d), we are able to glean from the points and argument sections of the brief the issues being raised by plaintiff. However, we do not condone the failure to comply with Rule 84.04(d) but, in the interest of resolving the case on its merits, we deny the motion.

Our standard of review of a grant of summary judgment is to review the record in the light most favorable to the party against whom judgment was rendered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially *de novo*. *Id.*

Greenbriar, a country club located on the border of the cities of Kirkwood and Des Peres, contains an eighteen-hole golf course on which there are numerous hills. In the late afternoon of January 19, 1994, the decedent and two friends, Steve Tellez and Brian Cizek, went to Greenbriar to ride their sleds. The depositions of Tellez and Cizek establish that upon entering Greenbriar's property they noticed that the hill where they first wanted to ride their sleds was blocked by orange snow fencing. They left the property and re-entered elsewhere by knowingly walking through other private property. They proceeded to a hill at the twelfth hole of the golf course. Intex does not dispute that the decedent was riding down the hill on a Sno-tube it had distributed.

The affidavit of Craig Leinauer, an employee of plaintiff's counsel, establishes that there are two trees at the foot of the hill at the twelfth hole which stand approximately thirty-two feet eight inches apart. Leinauer's affidavit further states that there lies a long speed-bump-like protrusion in the otherwise flat area just in front of the two trees which is approximately one and one-half feet high. In his deposition, Brian Cizek, who witnessed the accident, states that on his fatal run, decedent sat cross-legged on the Sno-tube and began accelerating down the hill. Cizek goes on to say that when decedent hit the bump, he went airborne, his legs became uncrossed, his torso flattened out, and the tube began to spin. Cizek further states that seconds after hitting the bump, decedent's head struck one of the trees at the bottom of the hill. Plaintiff's amended petition states that the decedent remained in a comatose state until he died on January 28, 1994 as a result of injuries sustained in the accident on January 19, 1994.

Plaintiff filed her action against defendants on May 5, 1995 individually and on behalf of decedent as next friend pursuant to section 537.080 RSMo 1994. After the trial court dismissed her first petition, she filed an amended petition, as personal representative and individually, with leave. The amended petition contained five counts, the first of which was against Greenbriar for negligence. The next three counts for strict liability, negligent design, and failure to warn were directed to Intex. The final count was directed to Kay–Bee Toy and Hobby Shops for breach of warranty. The negligent design claim against Intex was only mentioned in a footnote to plaintiff's second point relied on. Since this was not properly contained in a point

relied on, it has not been preserved for review. *State ex rel. Hwy. & Tr. Com'n v. Pracht*, 801 S.W.2d 90, 92 (Mo.App. E.D. 1990), Rule 84.04(d). Further, because the claim against Kay–Bee was not set forth in a point relied on, it is deemed abandoned. *Id.*

Following numerous continuances and a venue dispute resulting in a voluntary change of venue by plaintiff, Greenbriar and Intex did not file answers to the amended petition. On September 11, 1997, Greenbriar filed its motion for summary judgment, specifically alleging that it was entitled to judgment as a matter of law because it owed no duty to decedent in that he was a trespasser, and the alleged dangerous condition was open and obvious. Greenbriar's motion was supported by (1) plaintiff's amended petition; (2) the affidavit of Greenbriar general manager, John Wright; and (3) an excerpt from plaintiff's answers to Greenbriar's interrogatories. Greenbriar also filed a memorandum in support of its motion. Later, Greenbriar filed an additional supplement containing references to (1) the deposition of decedent's friend who was present on the day of the accident and witnessed the accident, Brian Cizek; (2) the deposition of decedent's friend who was present on the day of the accident and the day before, Steve Tellez; (3) the deposition of Angela Mothershead; and (4) various photographs of the site of the accident.

Plaintiff filed her response to Greenbriar's motion supported by: (1) the deposition of Tellez; (2) the deposition of Wright; (3) the deposition of Greenbriar treasurer Edward J. Goedeker; (4) a Post–Dispatch article published after the accident reporting another accident which took place on the same hill prior to decedent's accident; (5) a Webster–Kirkwood Times article reporting decedent's death; and (6) the affidavit of Cizek. The response was supplemented by a memorandum of law. Later, with leave of the court, plaintiff filed a supplement to her initial response to Greenbriar's motion, which she identified as a memorandum of law, setting forth legal arguments and attached the following exhibits: (1) the deposition of Tellez; (2) photocopies of the box in which the Sno-tube was sold; (3) the deposition of Cizek; (3) the deposition of Wright; (4) various photographs of Greenbriar's property; (5) a copy of the Post–Dispatch article attached to plaintiff's initial response; (6) the affidavit of Wright; and (7) the affidavit of Leinauer, with exhibits.

In its motion for summary judgment, supplement and supporting memorandum of law, Greenbriar contended that it owed no duty to warn decedent of dangerous conditions on the property because he was a trespasser. This contention was supported by the deposition testimony of Cizek and Tellez, who stated that, on the day of the accident, they parked on property adjacent to the golf course which they knew to be private and proceeded to walk onto the golf course. Their testimony goes on to show that these individuals knew that they were not invited onto the property and were there for their own amusement. Greenbriar further argued that the dangerous condition was open and obvious as a matter of law, in that the mere existence of the snow-covered hill and the trees at the bottom of it was an open and obvious danger to someone speeding down the hill on a tube.

Responding, plaintiff contends that Greenbriar knew or should have known of the presence of the sledders on the hill at the twelfth hole; thus, decedent became at least a licensee. In the alternative, plaintiff argued that liability existed on the part of Greenbriar even if decedent was a trespasser, contending that the bump at the bottom of the hill was the real cause of the decedent's death and that this dangerous condition was not open and obvious as it was not discernable to the naked eye. The trial court granted Greenbriar's motion for summary judgment.

Later, Intex filed its motion for summary judgment, attaching as exhibits (1) plaintiff's amended petition; (2) plaintiff's

answers and objections to the interrogatories directed to her by Intex; (3) various photographs of the scene of the accident; (4) a copy of the trial court's order granting Greenbriar's motion for summary judgment; (5) the deposition of Tellez; (6) photocopies of the several sides of the box in which the Sno-tube was sold; and (7) the deposition of Cizek. Intex also filed a memorandum in support of its motion.

In its motion for summary judgment and memorandum in support thereof, Intex argued that appellant failed to make a prima facie showing that the alleged inability of the Sno-tube to be steered, controlled, or safely exited was the proximate cause of decedent's injury. Intex relied on the testimony of Tellez who stated that, on the day before the accident, decedent had successfully made such efforts to steer, control, and safely abandon the Sno-tube on the same hill. Further, Intex relied on the testimony of Cizek who stated that he did not see decedent make any effort to brake or steer the Sno-tube before his impact with the tree. Plaintiff responded to Intex's motion by incorporating her memoranda of law in response to Greenbriar's motion. The trial court granted Intex's motion for summary judgment.

We initially note that plaintiff's response to Intex's motion for summary judgment was defective because it consisted only of an incorporation of her memoranda of law responding to Greenbriar's motion. The incorporated memoranda of law are not structured, nor do they dispute the substantive facts in a manner necessary to satisfy the requirements of Rule 74.04(c)(2). The memoranda lay out facts applicable almost exclusively to plaintiff's case against Greenbriar and legal arguments in support thereof. These memoranda do not answer the factual allegations set forth in Intex's motion for summary judgment as required by the rule. In *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940 (Mo.App. E.D. 1996), we held that the incorporation by reference of a memorandum of law does

not satisfy the requirement of a properly drafted response to a motion for summary judgment. The factual allegations in Intex's motion for summary judgment not having been denied by plaintiff in her response, are treated as admitted. *See ITT*, 854 S.W.2d at 376. Therefore, there is no dispute of the material facts as alleged by Intex. *See Id.*

Despite the defectiveness of her response, plaintiff argues that the standard of review requires that we look at all of the information before the trial court at any time from the filing of the initial petition. However, the rules of civil procedure dictate otherwise. The trial court grants or denies motions for summary judgment on the basis of what is contained in the motions for summary judgment and the responses thereto. *See* Rule 74.04(c)(3). As an appellate court, we are confined to considering the same information that the trial court considered in rendering its decision on the motion for summary judgment. *See ITT*, 854 S.W.2d at 376.

Plaintiff cites Rule 74.04(c)(1) to bolster her contention that we should review the entire record. The rule does not grant the trial court such an extensive scope of review. The rule in pertinent part states that motions for, and responses to, summary judgment must set out material facts, "with specific references to the pleadings, discovery or affidavits", in asserting either a lack of a genuine issue of fact or an existence thereof. Rule 74.04(c). If the trial court is limited in its review to the documents set out with specificity in the motion for summary judgment and the response thereto, then so is this court. *See ITT*, 854 S.W.2d at 376; *E.O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 169 (Mo.1967).

In her first point on appeal, plaintiff contends that the trial court erred in granting summary judgment to Greenbriar because the pled facts established decedent as either an invitee on Greenbriar's property, or a trespasser to whom

Greenbriar owed a duty. She argues that, prior to the January 19, 1994 incident, Greenbriar never stopped or even discouraged anyone from riding sleds on its property. She further states in her second memorandum of law in support of her response to Greenbriar's motion for summary judgment that there were worn footpaths and other indications that people regularly used Greenbriar's property for personal amusement. She contends that Greenbriar knew or should have known of the sledders' presence and acquiesced thereto, allowing the decedent's status as a trespasser to be upgraded to licensee.

Responding, Greenbriar argues that it had no knowledge of any persons sledding on the hill in question. Greenbriar contends that it did have knowledge of sled riding on other parts of its property and took measures to stop it, as evidenced by Cizek's undisputed testimony establishing that orange fencing had been erected on the hill down which the three boys initially wished to sled.

 In Missouri, the status of the entrant on the land of another determines the duty of care owed by the possessor of land. An entrant's status is either that of; (1) a trespasser, who enters without consent or privilege; (2) a licensee, who is on the property with consent, but for his or her own purposes; or, (3) an invitee, who is on the property with consent and to the benefit of the possessor. *Seward v. Terminal R.R. Ass'n.*, 854 S.W.2d 426, 428 (Mo.banc 1993). Generally, a possessor of land is not liable for harm caused to a trespasser by failure to put land in a reasonably safe condition. *McVicar v. W.R. Arthur & Co.*, 312 S.W.2d 805, 812 (Mo. 1958). This rule is not based on the wrongful nature of the trespasser's conduct, but on the possessor's inability to foresee trespasser's presence and guard against injury. *Id.*

We initially note that, although plaintiff's first point asserts that decedent was either an invitee or trespasser to whom Greenbriar owed a duty, she argues that he was either a licensee or a trespasser to whom Greenbriar owed a duty. Thus, her argument is directed only to decedent as a licensee or trespasser, not an invitee. In the interest of a resolution on the merits, we will review in accordance with the argument and not the point.

In her brief, Plaintiff argues that decedent's status on Greenbriar's property was that of licensee, and therefore, Greenbriar should be held to the duty of care owed a licensee. Greenbriar argues in its motion for summary judgment and its brief that decedent was a trespasser, but even if he were a licensee, that the open and obvious danger presented by the hill and trees absolved it of any duty to protect decedent from injury. In response to Greenbriar's assertion that the dangerous condition was open and obvious, plaintiff relies on our holding in *Hellmann v. Droege's Supermarket, Inc.*, 943 S.W.2d 655, 659 (Mo.App. E.D.1997) to assert that the question of open and obviousness is one for the jury. *See* section 343A of the Restatement (Second) of Torts, (1965). There, we held that if a risk of harm remains even if the plaintiff exercises due care, the case must be submitted to a jury. *Id. Hellmann,* as well as Restatement section 343A, is limited to entrants upon land with the status of invitee. Since plaintiff concedes in her argument that decedent's status is no higher than that of a licensee, principles of law applicable to an invitee are not helpful.

Although plaintiff failed to argue decedent's status as an invitee, the question remains whether Greenbriar owed him a duty as a licensee or trespasser. Plaintiff contends that decedent was a licensee under *Seward* and that uninvited entrants on land need not have express permission to be on the land in question to be categorized as licensees if the possessor thereof has knowledge of and acquiesces to repeated entrance to limited areas of land. *Seward,* 854 S.W.2d at 428.

The undisputed testimony of Tellez and Cizek establishes that they did not have

the express permission of anyone at Greenbriar to be on its property, but plaintiff argues that Greenbriar did know of the presence of sled riders, and subsequently acquiesced to it. In her supplement, plaintiff cites evidence, noted in Greenbriar's response to plaintiff's interrogatories, of worn paths and beverage containers contained on Greenbriar's property to show that Greenbriar knew that trespassers were there. Additionally, Plaintiff relies on the affidavit and deposition of Wright to show that Greenbriar knew of the trespassers and acquiesced to their presence. Wright admits in his deposition that he rode sleds on the course prior to becoming an employee of the club or a member, but he says that he did not sled on the hill at the twelfth hole.

Greenbriar contends through citation to the affidavit of Wright that it had various "no trespassing" signs posted on fencing surrounding its property on the date of the accident. Plaintiff refutes this contention citing the deposition and affidavit of Cizek and the deposition of Tellez in which they state they observed no such signs. However, Cizek's undisputed testimony states that on the day of the accident he, Tellez and the decedent saw the orange storm fencing on the most frequently sledded hill, where they initially wished to sled. This indicates an attempt by Greenbriar to halt sledding on certain parts of its property.

Viewed in the light most favorable to the plaintiff, the evidence set forth above fails to show that Greenbriar knew or should have known of the presence of trespassers at the hill at the twelfth hole, and therefore prevents plaintiff from meeting the acquiescence requirement of *Seward*. *See Seward*, 854 S.W.2d at 428. This requirement not having been met, decedent's status may not be elevated to that of a licensee and, accordingly, Greenbriar owed no duty to decedent as a licensee. *Id.* Since the facts fail to establish that decedent was entitled to the protection owed a licensee, his status is that of a trespasser. Thus,

only an exception to the general rule of land possessor liability set forth in *McVicar* would effectuate a duty owed to decedent by Greenbriar. *See McVicar*, 312 S.W.2d at 812.

■ Plaintiff contends that an exception to the general rule as to trespassers applies. She alleges that, even if decedent was trespasser, Greenbriar still owed him a duty as defined by section 335 of the Restatement (Second) of Torts, (1965):

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

■ This section of the Restatement has been considered on numerous occasions and the respective fact pattern failed to fulfill all of the requirements of the section. *See Seward*, 854 S.W.2d at 429; *Politte v. Union Elec. Co.*, 899 S.W.2d 590, 593 (Mo.App. E.D.1995); *Cochran v. Burger King Corp.*, 937 S.W.2d 358, 364 (Mo. App. W.D.1996). The facts here similarly fail to fit the requirements of this section of the Restatement because plaintiff fails to establish requirement (a)(iii). A "defending party" may establish a right to summary judgment by showing facts that negate *any one* of the claimant's elements. *ITT Commercial Fin.*, 854 S.W.2d at 381.

Greenbriar defends against the possible application of this Restatement provision in its brief by claiming that the trees and the hill together amounted to an open and obvious dangerous condition. According to Greenbriar, this fact pattern fails to meet requirement (a)(iii) of the Restatement in that Greenbriar would not have reason to believe that the danger was of such a nature that trespassers would not discover it. In the supplement to its motion for summary judgment, Greenbriar relies on the depositions of Tellez and Cizek who both testify that the presence of the trees at the bottom of the hill was obvious. Tellez goes on to testify that it was obvious that striking one of these trees at any speed could result in serious injury.

Plaintiff admits in her response to Greenbriar's motion for summary judgment "that the hill upon which the decedent was sledding, and a tree at its base were a dangerous condition against which defendant Greenbriar should have warned or protected." Later, in the supplement to her response to Greenbriar's motion for summary judgment, filed on the day prior to the entry of summary judgment, plaintiff alleged that the dangerous condition which caused decedent's accident was the berm at the base of the hill at the twelfth hole. The trial court, relying on plaintiff's admission in her initial response as to the hill and tree, sustained the motion on the basis that the "hill and trees are an open and obvious condition."

The testimony of Tellez and Cizek concerning the obviousness of the presence of the trees is undisputed. Tellez's further testimony that it was obvious that striking one of the trees at any speed would result in serious injury is also undisputed. Because the presence and danger of plaintiff's alleged dangerous condition of the hill and the tree is obvious, it is not of such a nature that Greenbriar had reason to believe that trespassers would not discover it. Therefore, plaintiff has not satisfied requirement (a)(iii) of section 335 of the Restatement. Accordingly, Greenbriar owed no duty to decedent to remove, remedy or warn of the obvious dangerous condition at the twelfth hole. The trial court's grant of summary judgment as to point one was not erroneous.

█ In her second point on appeal, plaintiff asserts that the trial court erred in granting Intex's motion for summary judgment on plaintiff's claim for defective design. The defect alleged by plaintiff in her amended petition and again in her brief is the Sno-tube's inability to be steered, controlled or safely exited.

Our Supreme Court in *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969) adopted strict liability for defective design as stated in Section 402A of Restatement (Second) of Torts, (1965). The elements of this principle are:

(1) One who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

█ In order for the trial court's entry of summary judgment to be proper, defendant need only present facts to defeat one of the law's requirements. *Waggoner v. Mercedes Benz of North America, Inc.*, 879 S.W.2d 692 (Mo.App. E.D.1994)

Intex does not dispute that it sold the Sno-tube in the course of business and does not contend that the sled was not being used in a reasonably anticipated manner. However, Intex does assert that the Sno-tube was not in a defective condition, as required by the first section of the restatement. This assertion is supported by testimony given by Tellez and Cizek. Tellez stated that decedent was able to steer, control and abandon the Sno-tube without injury on the day prior to the accident. Further, Cizek testified that he saw decedent make no effort to steer or brake the Sno-tube at any time during decedent's fatal run. This undisputed testimony establishes that on the day before the accident, decedent did what the alleged defect allegedly should have prevented him from doing, and made no effort to do so again on his fatal run. Thus, the Sno-tube was not in the defective condition alleged by the plaintiff.

■ Plaintiff asserts that it is for a jury to decide whether the Sno-tube was in a defective condition. Plaintiff cites our holding in *Rauscher v. General Motors Corp.*, 905 S.W.2d 158, 160 (Mo.App. E.D. 1995) for the proposition that juries have been given "broad authority" to make a determination as to whether a product was in a defective condition. However, *Rauscher* does not stand for the proposition that all cases involving defective design are for a jury. Summary judgment is proper where reasonable minds could not differ as to the interpretation of the evidence. *Chancellor Development Co. v. Brand*, 896 S.W.2d 672, 677 (Mo.App. E.D. 1995). Because the facts here are established by plaintiff's failure to respond, reasonable minds could not differ in inferring from Tellez's and Cizek's undisputed testimony that the alleged defect did not cause decedent's injury. The defect in design alleged by plaintiff was refuted by Tellez's undisputed testimony that decedent was able to do all of the things that the alleged defect should have prevented him from doing, i.e., decedent was able to steer,

control and safely exit the Sno-tube on the day prior to the accident. The alleged defect was further refuted by Cizek's undisputed testimony that decedent made no effort to steer, control or exit the Sno-tube during his fatal run. Therefore, summary judgment was proper because plaintiff failed to demonstrate that the defective condition of the Sno-tube when sold was the proximate cause of the decedent's injuries.

■ In her third and final point on appeal, plaintiff contends that the trial court incorrectly granted Intex's motion for summary judgment on the theory of failure to warn.

■ Initially, we note that Intex questions whether plaintiff initially pled negligent failure to warn (MAI 25.09) or strict liability for failure to warn (MAI 25.05). Causation is a required element of failure to warn in a product liability case, and Missouri law applies the same two-pronged causation test in all cases involving failure to warn. *Arnold v. Ingersoll–Rand Company*, 834 S.W.2d 192, 194 (Mo.banc 1992). Because the issue of failure to warn may be decided on the two-pronged test, we find it unnecessary to determine under which theory plaintiff initially pled for relief.

■ The first prong of the causation test requires proof of a proximate causal link between decedent's injury and the product allegedly lacking a warning or having an inadequate warning. *Id.* The second prong requires that the plaintiff show that a warning would have altered the behavior of those involved in the accident. *Id.* If one of the causation elements is lacking, summary judgment was correctly entered by the trial court. *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo.banc 1994).

The first prong of this test requires the plaintiff to show that the product for which there was no warning caused the injuries. Plaintiff contended in her amended petition and brief that the Sno-tube's inherent

inability to be steered, controlled or abandoned was the cause of decedent's accident. Due to our disposition of the second point, we find no causal relation between the Sno-tube's alleged inability to be steered, controlled or abandoned, and decedent's fatal injury. Therefore, plaintiff fails to meet the requirement of the first prong of the test set forth in *Arnold* because the product allegedly lacking a warning did not cause decedent's injuries.

Judgment affirmed.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.