E.J. HOLLEY, Plaintiff–Respondent,

v.

Joseph P. CAULFIELD and Donald V. Nangle, Defendants–Appellants.

No. ED 77719.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 29, 2001.

---

Arthur G. Muegler, St. Louis, MO, for appellants.

Christina L. Kime, L. Dwayne Hackworth, Piedmont, MO, for respondent.

MOONEY, Presiding Judge.

Joseph Caulfield and Donald Nangle (Defendants) appeal from a jury verdict awarding E.J. Holley (Holley) $46,845.05 in his suit for malicious prosecution against Defendants. The Defendants further appeal the trial court's dismissal of their abuse-of-process counterclaims for failure to state a cause of action. We shall only address two of Defendants' claims of error because they are dispositive of all issues on appeal.

Defendants contend the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict (JNOV) and entering judgment for Holley because Holley failed to make a submissible malicious prosecution case against either Defendant, and in dismissing Defendants' abuse-of-process counterclaims for failure to state a cause of action. Because we find Defendants had probable cause to file and continue their prior quiet-title suit, we reverse the judgment rendered in the malicious prosecution action. Because we find Defendants' abuse-of-process claim conclusory, we affirm the trial court's dismissal of the counterclaim.

This dispute arose from two overlapping deeds that sought to convey good title to the same parcel of land. During the summer of 1987, Caulfield purchased a 167 acre-tract of land from James Michael O'Day (Michael O'Day), conveyed by warranty deed. Prior to the purchase, Caulfield contacted a title company to trace title, and the company determined that fee simple absolute to the property vested in Michael O'Day. From 1987 until 1994, Caulfield's son established a residence on the property and Caulfield paid the annual real estate taxes.

In October or early November 1994, Wayne County Title Company advised Caulfield that Michael O'Day did not own all the property conveyed by the warranty deed, and that Holley claimed title to an 11.8 acre tract of the land (Holley Property). The title dispute was discovered when Holley attempted to pledge the property as collateral, and the title company advised Holley of the overlapping deeds. Caulfield hired attorney Nangle to represent him in this matter, who advised Caulfield to file a quiet-title suit. Caulfield agreed, and a quiet-title action was filed naming Holley as a party defendant.

After Nangle filed Caulfield's quiet-title action, Caulfield received a letter from attorney L. Dwayne Hackworth (Hackworth), stating that the Wayne County Title Company researched the chain of title for the property in dispute and discovered that Holley maintained superior title to the 11.8 acres of disputed land. Hackworth provided copies of relevant deeds in his correspondence with Caulfield, as well as a quit-claim deed for Caulfield to sign. Caulfield, however, did not sign and proceeded with his quiet-title action. In response to Caulfield's quiet-title lawsuit, Holley filed a counterclaim alleging Holley's right to the disputed land on an adverse possession theory.

Caulfield's quiet-title action went to trial in September 1995, and judgment was entered in favor of Caulfield and against Michael O'Day in the sum of $4,388.61. The judgment also stated that Holley was

the fee simple owner of the Holley Property upon the finding "[t]hat Defendant, E.J. Holley, and his predecessors in title have been in the actual, exclusive, notorious and adverse possession of the 'Holley Property' for more than 31 years prior to the 16th of December, 1994."

After judgment was entered, Holley filed a petition alleging Defendants were guilty of malicious prosecution for filing and pursuing their meritless quiet-title action. Defendants filed abuse-of-process counterclaims, which were dismissed by the trial court for failure to state a cause of action. In January 2000, a jury awarded Holley $46,845.05 in actual damages on his malicious prosecution claim. Defendants filed a motion for JNOV, or alternatively, a new trial, which was denied. Defendants then filed this timely appeal.

### Submissibility of Holley's Malicious Prosecution Claim

Defendants' first contention on appeal is that the trial court erred in denying Defendants' motions for directed verdict and JNOV and in entering judgment against Defendants because Holley failed to make a submissible malicious prosecution case against either Defendant. We agree.

■ The denial of a motion for JNOV presents the same issue as a motion for directed verdict. The question in both cases is whether plaintiff has made a submissible case. *Wells v. Orthwein,* 670 S.W.2d 529, 532 (Mo.App. E.D.1984). A submissible case requires substantial evidence for every fact essential to liability. *Steward v. Goetz,* 945 S.W.2d 520, 528 (Mo.App. E.D.1997). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Davis v. Board of Educ. of City of St. Louis,* 963 S.W.2d 679, 684 (Mo.App. E.D.1998), *quoting Hurlock v. Park Lane*

*Medical Cntr., Inc.,* 709 S.W.2d 872, 880 (Mo.App. W.D.1985). The questions of whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law. *Hurlock,* 709 S.W.2d at 872.

■ In determining whether a plaintiff has made a submissible case, we review the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Eidson v. Reproductive Health Svcs.,* 863 S.W.2d 621, 626 (Mo.App. E.D.1993). We disregard all of defendant's evidence that does not support the plaintiff's case. *Feely v. City of St. Louis,* 898 S.W.2d 708, 709 (Mo.App. E.D.1995). Moreover, because "the establishment of want of probable cause involves proving a negative, slight proof thereof is all that is required to make a prima facie case." *Haswell v. Liberty Mut. Ins. Co.,* 557 S.W.2d 628, 633 (Mo. banc 1977). Nevertheless, we do not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Feely,* 898 S.W.2d at 709. The plaintiff's evidence and inferences must establish every element and not leave any issue to speculation. *Steward,* 945 S.W.2d at 528.

■ Actions in malicious prosecution have never been favorites of the law. *Sanders v. Daniel Intern. Corp.,* 682 S.W.2d 803, 807 (Mo. banc 1984). Therefore, in order for Holley to make a submissible case for malicious prosecution claims, he must provide "strict and clear proof" of the following six elements: (1) the commencement of an earlier suit against plaintiff, (2) instigation of the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damages to plaintiff re-

sulting from the suit. *Integra a Hotel and Restaurant Co. v. Ragan*, 887 S.W.2d 731, 732 (Mo.App. W.D.1994), *citing Burnett v. Griffith*, 769 S.W.2d 780, 784 n. 2 (Mo. banc 1989). Defendants contend that Holley failed to make a submissible case on the second through six elements. We agree with Defendants regarding the fourth element, and find that Holley failed to present sufficient evidence that Defendants lacked probable cause to file and continue their quiet-title action against Holley.

The Missouri Supreme Court has defined probable cause for the institution of a civil action to consist of: (1) the plaintiff's belief in the facts alleged, (2) based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus (3) a reasonable belief that under the facts the claim may be valid under the applicable law. *Haswell*, 557 S.W.2d at 633; *see also* Restatement (Second) of Torts, section 675. Thus, probable cause in a civil suit has been defined as a reasonable belief in the facts alleged, plus a reasonable belief that the claim may be valid. *State ex. rel. Police Ret. v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994). Reasonable belief means that a party is "responsible not only for all the facts which he knows at the time, but for all other pertinent facts which he could have ascertained by due diligence prior to instituting the prosecution." *Buch v. Holliday*, 803 S.W.2d 56, 60 (Mo.App. E.D.1990), *quoting Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479 (Mo.1972). Reasonable belief will always depend on the particular facts of a case. *McGuire*, 689 S.W.2d at 722. However, probable cause does not depend upon what may have ultimately been proved to be the actual facts embraced in the previous action, but instead upon a reasonable belief of the one who instituted the prosecution. If it appears that a reasonably prudent person would have acted under the circumstances as such person did, then the existence of probable cause is sufficiently established. *Zahorsky v. Griffin, Dysart, Taylor, Penner, and Lay, P.C.*, 690 S.W.2d 144, 152 (Mo.App. W.D.1985).

The facts of this suit are largely undisputed. To the extent some minor details of the prosecution of the quiet-title action are disputed, we assume all such factual issues to be found in favor of Holley. *Eidson*, 863 S.W.2d at 626. Still the existence of probable cause is a question of law for the court to decide. *Fust v. Francois*, 913 S.W.2d 38, 44 (Mo.App. E.D.1995).

We find that Holley did not present sufficient evidence that either Caulfield or Nangle lacked probable cause to file and continue the quiet-title lawsuit against him. To the contrary, the record shows that Caulfield sought and relied on the title opinion that Michael O'Day had good and marketable title to the property in dispute, was given a warranty deed to the property, paid annual real estate taxes on the property, and his son established residence on the land. After learning of Holley's property claim, Caulfield worried that Piedmont Bank (Bank), who held the deed of trust on his property, would accelerate his note if Caulfield did not own the entire tract of land because the Bank would then be undersecured on the loan. Caulfield then retained attorney Nangle to represent him, presented all the information to his lawyer, and relied on Nangle's legal advice in bringing and continuing the quiet-title action against Holley. We find that under the facts presented Caulfield acted as a reasonably prudent person would have acted under the circumstances, and thus conclude that Holley failed to establish that Caulfield lacked probable

cause to bring and continue the quiet-title action against him.

With respect to attorney Nangle, the *Haswell* court held that the definition of probable cause is applicable to all defendants in a malicious prosecution action, including attorneys. *Zahorsky,* 690 S.W.2d at 154. There, the court relied on Restatement (Second) of Torts, section 675, which states:

> If the legal validity of a claim is uncertain, the person who initiates the civil proceeding may believe that his claim is meritorious, but he can have no more than an opinion that the chances are good that the court might decide to uphold it. The question is not whether he is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim be sustained is a reasonable one.

*McGuire,* 689 S.W.2d at 722.

The focus of the definition in section 675 is on the reasonable belief of the attorney-defendant in question, and whether Holley set forth substantial evidence that Nangle did not in good faith believe the facts brought to him by his client and did not reasonably believe those facts stated a valid claim. *See Zahorsky,* 690 S.W.2d at 154.

 Nangle maintained a reasonable belief that the facts presented by Caulfield stated a valid claim for Caulfield's superior title to the land. He reviewed the evidence presented by Caulfield, including deed papers and the title opinion, was aware of the Bank's right to accelerate Caulfield's loan on the property, and realized the likelihood that the Bank would exercise such option if Caulfield's loan became undersecured. Moreover, Nangle was presented with conflicting title opinions regarding who had superior title to the disputed land, while forced to defend

against Holley's shifting legal defense during the proceedings. Under such circumstances, we find insufficient evidence that Nangle lacked probable cause and conclude the trial court erred in finding that Holley made a submissible case against Caulfield and Nangle for malicious prosecution. Accordingly, we reverse.

### Defendants' Abuse–of–Process Claim

 Defendants also allege on appeal that the trial court erred in dismissing their first amended counterclaims because they sufficiently pleaded the essential elements of an abuse-of-process claim against Holley.

 Our court shall sustain a motion for judgment on the pleadings if the facts pleaded by the petitioners, and all reasonable inferences drawn therefrom, show that the petitioners cannot prevail under any legal theory. *Joseph v. Marriott Intern., Inc.,* 967 S.W.2d 624, 627 (Mo.App. W.D.1998). Moreover, when reviewing a motion for judgment on the pleadings, our court is required to accept each allegation set forth in the petition as true. *Angelo v. City of Hazelwood,* 810 S.W.2d 706, 707 (Mo.App. E.D.1991).

 In order to sufficiently state a claim for abuse of process, a pleading must set forth ultimate facts establishing the following elements: (1) the defendant made an illegal, improper, perverted use of the process, a use neither warranted or authorized by the process; (2) the defendant had an illegal purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted to plaintiff. *Muegler v. Berndsen,* 964 S.W.2d 459, 462 (Mo.App. E.D.1998). After review of the record, we find that the trial court did not err in dismissing Defendants' counterclaims because their pleadings for abuse of process merely alleged conclusory

statements, which even if assumed true were insufficient as a matter of law.[1] Point denied.

We reverse in part and affirm in part.

PAUL J. SIMON, J., and SHERRI B. SULLIVAN, J., concur.

1. We note that although the trial court dismissed Defendants' original counterclaims, they were given 15 days in which to file amended counterclaims. However, Defendants' amended counterclaims set forth the identical allegations as contained in their original counterclaims, and merely removed the allegations as to Hackworth, James E. Bowles, and the law firm of Hackworth, Kime & Bowles.