# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1683

_____

| | | |
|---|---|---|
| John Nichols, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Harbor Venture, Inc.; Horseshoe | * | Eastern District of Missouri. |
| Casinos, (Missouri), L.L.C.; Missouri | * | |
| River Equities, Inc.; Donald Schupak, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  November 13, 2001

Filed:  March 21, 2002 - Corrected 4/10/02

_____

Before WOLLMAN, Chief Judge,[1] BOWMAN and STAHL,[2] Circuit Judges.

_____

BOWMAN, Circuit Judge.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

John Nichols appeals from orders of the District Court (1) denying his motion to remand this removed case to state court and (2) dismissing under Federal Rule of Civil Procedure 12(b)(6) his state-law claims alleging abuse of process and malicious prosecution. We reverse on the jurisdictional issue and remand to the District Court.

The genesis of the case presently before the Court is a 1972 suit brought in the United States District Court for the Eastern District of Missouri by Nichols and others, including the Missouri Coalition for the Environment, Inc., seeking to enjoin a proposed development in Earth City, St. Louis County, Missouri. In 1976, the suit was resolved with a Settlement Agreement and a Final Decree (collectively, the consent decree). Under the terms of the consent decree, a tract of land along the Missouri River was to be preserved as green space, subject to use and improvement restrictions.

Fast forward to 1996, when the then-owner of the tract of land, the Conservation Commission of Missouri, granted an option to Harbor Venture, Inc.; Horseshoe Casinos (Missouri), LLC; and Missouri River Equities, Inc. (which, together with the individual defendant in this suit, Donald Schupak, we will refer to as Harbor Venture), to use the land in the construction and operation of a casino facility. Nichols and the Missouri Coalition for the Environment filed in the United States District Court for the Eastern District of Missouri a "Motion to Enforce Final Decree," naming as defendants the opponents in the original 1972 lawsuit (or their successors) and Horseshoe Casinos. The district court granted Horseshoe Casinos' motion to dismiss on the ground that the case was not ripe for review because the official authorization for operation of a gaming facility was not yet in place. In May 1996, having received the required governmental approvals, Harbor Venture went to state court seeking a declaratory judgment that its proposed casino would not violate the 1976 consent decree. The petition also sought injunctive relief and damages from Nichols for breach of the settlement agreement.

Nichols removed the case to the United States District Court for the Eastern District of Missouri and filed a counterclaim. Harbor Venture's motion to remand to state court was denied. Harbor Venture, Inc. v. Nichols, 934 F. Supp. 322 (E.D. Mo. 1996). The district court, having determined that the case was ripe for decision, held that Harbor Venture's proposed use of the land would violate the 1976 consent decree. The court therefore denied the declaratory relief sought by Harbor Venture and dismissed Nichols's counterclaim as moot. (Harbor Venture had previously dismissed voluntarily its claims for injunctive relief and damages.) This Court affirmed in an unpublished opinion. Harbor Ventures, Inc. v. Nichols, 133 F.3d 922 (8th Cir. 1998) (unpublished table decision).

On February 23, 2000, Nichols filed the instant suit in state court against Harbor Venture alleging that Harbor Venture's 1996 action for declaratory judgment, injunctive relief, and damages was malicious prosecution and an abuse of process under Missouri common law. Harbor Venture removed the case to the United States District Court for the Eastern District of Missouri, and Nichols sought remand to state court. The District Court denied Nichols's motion for remand, noting the "considerable effort" expended by Nichols over the previous twenty-five years to keep the underlying litigation in federal court. Order of May 25, 2000, at 4. The court determined that Nichols is seeking, even now, "to exercise claims arising from that substantially federal litigation" and that federal jurisdiction over his state-law claims therefore was proper. Id. The court then granted Harbor Venture's motion to dismiss for failure to state claims upon which relief can be granted. Nichols appeals.

Taking the jurisdictional question first, as we must, we review de novo the District Court's denial of Nichols's motion to remand his case to state court. United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001).

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States

shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b) (1994). Nichols's actions for abuse of process and malicious prosecution clearly "arise under" the common law of Missouri, not federal law. Indeed, Harbor Venture does not suggest that this is a case properly removed because federal law actually *creates* the causes of action Nichols asserts. See Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986). It is Harbor Venture's position, however, that Nichols's state-law claims "necessarily implicate the scope of federal power under the Consent Decree, and attack defendants' rights to declare and enforce their rights under that federal decree." Br. of Appellees at 6. According to Harbor Venture, it is enough for purposes of federal removal jurisdiction that the adjudicating court will have to "confront" a consent decree that was entered in federal court when it decides the merits of Nichols's state-law allegations. Id. at 8.

It is true that "[e]ven though state law creates [Nichols's] causes of action, [his] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [his] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983). In other words, the case must present "some substantial, disputed question of federal law [as] a necessary element" of Nichols's state-law claims if the federal courts are to have jurisdiction over the case. Id. We look first at the Missouri cause of action for malicious prosecution to determine what role the 1976 consent decree may play in adjudicating that claim.

Of the six elements that a plaintiff must prove to prevail on a claim for malicious prosecution under Missouri law,[3] Harbor Venture argues that a lack of

---

[3]The elements of a cause of action for malicious prosecution in Missouri are "(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged." Sanders v. Daniel Int'l Corp., 682

-4-

probable cause for the underlying suit is the one element that will require the court to "confront the Consent Decree, the meaning of its terms, and whether defendants were justified in seeking an interpretation of those terms as they applied to" the proposed casino (or the proposed "barge facility," as Harbor Venture euphemistically puts it). Br. of Appellees at 9. We consider whether Harbor Venture is correct in its assertion that Nichols's claim for malicious prosecution therefore "arises under" federal law, mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

Under Missouri law, "probable cause in a civil suit [for malicious prosecution] has been defined as a reasonable belief in the facts alleged, plus a reasonable belief that the claim may be valid." Holley v. Caulfield, 49 S.W.3d 747, 751 (Mo. Ct. App. 2001). The adjudicating court will need to consult the consent decree only to determine if a "reasonably prudent person would have acted under the circumstances" as did Harbor Venture in bringing the underlying lawsuit. Id. ("[T]he existence of probable cause is a question of law for the court to decide."). Surely any judge, state or federal, is fully capable of reading the consent decree and determining whether Harbor Venture's beliefs vis-a-vis the underlying suit's facts and legal validity were reasonable. There will be no need to construe the consent decree, to resolve conflicting views on the meaning of its language, or to determine how the consent decree is to be applied in a given situation. And because it will be unnecessary to interpret the essence of the consent decree in order to determine whether Harbor Venture had probable cause to bring the underlying suit, there is no substantial question of federal law to be resolved in adjudicating Nichols's action for malicious prosecution. See Berg v. Leason, 32 F.3d 422, 424-25 (9th Cir. 1994) (concluding federal removal jurisdiction was not proper in a malicious prosecution case). We

_____

S.W.2d 803, 807 (Mo. 1984) (en banc).

hold that the merits of this state-law claim therefore should be decided in Missouri state court.

Harbor Venture relies primarily on Nichols's claim for malicious prosecution for its contention that federal jurisdiction is proper, noting that the federal court needs jurisdiction over only one of Nichols's state-law claims (because of pendent jurisdiction) to stay in federal court on both claims. Harbor Venture nevertheless contends that Nichols's "abuse of process claim implicated federal law as well" and therefore provides an alternate basis for federal jurisdiction. Br. of Appellees at 9. Harbor Venture lays out the elements of a cause of action for abuse of process[4] and contends that "[b]ecause essential elements of Nichols' abuse of process claim turn upon the federal Consent Decree, federal question jurisdiction exists." Id. at 10. We disagree. None of the elements of a cause of action for abuse of process, focusing as they do on the nature of the use of process and the defendant's motivation, not on the merits of the underlying claim made by way of that process, appears to require more than a cursory reading of the consent decree, if that. Further, to the extent Nichols's claim for abuse of process includes charges that an attempt to thwart the exercise of his federal constitutional rights was among Harbor Venture's illegal purposes, we do not see how conflicting issues of federal law are raised by such a contention. The court will only need to determine if the suit really was brought to stifle Nichols in the exercise of his rights and if Harbor Venture's motivation in bringing suit is as alleged. The constitutional rights themselves are not at issue. A decision on the merits of

_____

[4]There are three elements that a successful plaintiff must prove to succeed on a claim for abuse of process under Missouri law: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." Stafford v. Muster, 582 S.W.2d 670, 678 (Mo. 1979) (en banc). "Stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process." Ritterbusch v. Holt, 789 S.W.2d 491, 493 n.1 (Mo. 1990) (en banc).

Nichols's claim for abuse of process will not require resolution of a substantial question of federal law.

Finally, Harbor Venture contends that the All Writs Act[5] also provides a basis for federal removal jurisdiction over Nichols's state-law claims.[6] The All Writs Act "gives federal courts power 'to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" Xiong v. Minnesota, 195 F.3d 424, 425 (8th Cir. 1999) (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977)). Harbor Venture asserts that the Act vests jurisdiction of Nichols's claims in the federal courts because his suit "seeks to punish the Harbor Venture Group for pursuing an interpretation of its rights under" a federal consent decree that the district court has sole authority to enforce and protect.[7] Br. of Appellees at 13. According to Harbor Venture, Nichols's lawsuit "directly affects the administration of justice by attempting to deprive parties governed by the federal Consent Decree from pursuing their rights under the Decree." Id. The problem Harbor Venture identifies, however (putting aside the legitimacy of the problem), is with the filing of the suit itself, not with how that suit is resolved or, more importantly, what court resolves it. Moreover, allowing federal jurisdiction over

---

[5]"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1994).

[6]The United States Supreme Court has granted certiorari in a case wherein the Eleventh Circuit held that the All Writs Act by itself cannot be the basis for removal jurisdiction, exacerbating a split in the circuits on the question. See Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1069-70 (11th Cir. 2001), cert. granted, 70 U.S.L.W. 3384 (U.S. Feb. 19, 2002) (No. 01-757).

[7]It is not lost on us that Harbor Venture, then represented by different counsel, brought the underlying suit in state court—a suit that unquestionably required interpretation of at least part of the 1976 consent decree—and fought Nichols's removal of the case to federal court.

Nichols's state-law claims under the auspices of the All Writs Act, when the federal consent decree will not be directly affected for good or ill by the outcome of the case, would result in a corruption of the Act. See Clinton v. Goldsmith, 526 U.S. 529, 534 (1999) ("While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction."); White v. Nat'l Football League, 41 F.3d 402, 409 (8th Cir. 1994) (noting that the All Writs Act "is not an independent grant of jurisdiction"), cert. denied, 515 U.S. 1137 (1995). We simply do not believe the All Writs Act was intended to confer federal removal jurisdiction over state-law claims, where no other basis for such jurisdiction can be found, when a litigant merely speculates that the pending state-court litigation—regardless of its outcome—will dissuade itself or other litigants from seeking interpretation of a federal consent decree.

In sum, we hold there is no basis for federal jurisdiction over Nichols's state-law claims for malicious prosecution and abuse of process. The case therefore was improperly removed to federal court. Notwithstanding the regrettable waste of judicial and private resources in which our decision today results, we must reverse the District Court's order denying Nichols's motion to remand to state court. We remand the case to the District Court with instructions to grant that motion. Because the District Court did not have jurisdiction, the order dismissing Nichols's claims must be and is vacated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.