**Robert HOGATE, Plaintiff/Respondent,**

v.

**AMERICAN GOLF CORPORATION, Defendant/Appellant.**

**No. ED 80151.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 12, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 2003.

Application for Transfer Denied
March 4, 2003.

---

Jeffery T. McPherson, Cynthia A. Sciuto, St. Louis, MO, for appellant.

Richard C. Witzel, David A. Dimmitt, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

American Golf Corporation ("AGC") appeals from a judgment on a jury verdict in favor of Robert Hogate ("Hogate") in a premises liability action. AGC claims that the trial court erred in denying its motion for judgment nothwithstanding the verdict because Hogate failed to prove a breach of duty by AGC, and Hogate failed to make a submissible case against AGC. Finding no duty, we reverse.

In reviewing the denial of a motion for judgment notwithstanding the verdict, we consider whether the plaintiff made a submissible case. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App. 2000). In order to make a submissible case, plaintiff must present substantial evidence to establish every fact essential to liability. *Id.* "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Id.* A judgment notwithstanding the verdict is a drastic action, and should not be granted except where reasonable minds could not differ as to the correct outcome of the case. *Id.* We view the evidence in the light most favorable to the verdict and we presume that plaintiff's evidence is true and disregard any of defendant's evidence which does not support the verdict. *Id.*

On April 9, 1996, Hogate was riding his bicycle on Art Hill in Forest Park. He rode the bike down the hill and onto the fourth fairway of the Forest Park golf course. His bike came into contact with a yellow rope which was strung along a newly sodded area of the fairway, and Hogate fell, sustaining injuries. Hogate filed a premises liability suit against AGC and the City of St. Louis and subsequently dismissed the claim against the City of St. Louis.

Hogate proceeded to trial against AGC. AGC moved for a directed verdict at the close of Hogate's case, as well as at the close of all evidence. These motions were denied. After the jury returned a verdict in favor of Hogate, AGC filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial or remittitur. The motions were not ruled upon by the trial court within ninety days, and were therefore deemed overruled on September 2, 2001. Rule 78.06. The present appeal followed.

In its first point relied on, AGC claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because AGC did not breach any duty to Hogate. AGC argues that Hogate was a trespasser because he deviated from the scope of any invitation which might have been extended to him by AGC, and Hogate failed to prove that he fell within any exception to the general rule that possessors of land are not liable to trespassers for harm caused by unsafe conditions on the land.

 Initially, Hogate argues that AGC's argument fails because AGC failed to object to any instructions given to the jury, particularly the verdict director, which Hogate claims submitted his liability as an invitee. Hogate relies upon *King v. Kansas City Life Ins. Co.*, 350 Mo. 75, 164 S.W.2d 458, 466 (banc 1942) for his assertion that the failure to object to an instruction constitutes an admission that substantial evidence exists to support the instruction. While *King* does, in fact, stand for the proposition that the failure to object waives any assertion of error in giving the instruction, and admits that substantial evidence supports the giving of the instruction, there is no instructional error at issue here. Additionally, the court in *King* noted that a party's failure to object to an instruction does not estop

him from claiming that the verdict in accordance with such instruction was against the weight of the evidence. *Id.* Moreover, several decades after the decision in *King*, Rule 72.01 was adopted which addresses motions for directed verdict and for judgment notwithstanding the verdict. Rule 72.01 states specifically that whenever a motion for a directed verdict at the close of all the evidence is denied, the court is "deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motions." In the present case, AGC filed a motion for directed verdict at the close of Hogate's case, as well as at the close of all evidence. Both motions were denied. Thus, the trial court submitted the action to the jury subject to a later determination of the question of Hogate's status and AGC's resultant duty. Therefore, AGC's failure to object to any instruction does not impact our decision.

 We next address the issue of AGC's liability as a possessor of land. "In Missouri, the status of the entrant on the land of another determines the duty of care owed by the possessor of land." *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 86 (Mo.App.1999). An entrant's status can be as a trespasser, a licensee, or an invitee. *Id.* A trespasser enters the land without consent or privilege. *Id.* A licensee enters the property with consent, but for his own purpose. *Id.* An invitee is a person who has been invited to enter the property with the expectation by the possessor of a material benefit from the visit. *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995). An entrant can also become an invitee when the possessor extends an invitation to enter the land to the public generally. *Id.* A possessor of land owes invitees "the duty to exercise reasonable care to protect them against both known dangers and those that

would be revealed by inspection." *Id.* Generally, a possessor of land does not owe a duty of care to a trespasser. *Id.* This rule is based not upon the wrongful nature of the trespasser's entry upon the land, but rather it is based upon the inability of the possessor of land to foresee the presence of the trespasser and guard against injury. *Mothershead,* 994 S.W.2d at 86.

Here, AGC argues that Hogate was a trespasser on the land when he ran his bike into the yellow rope, and therefore, AGC owed him no duty of care. According to AGC, Hogate exceeded the scope of any invitation which may have been extended to him by AGC. As discussed above, a person can be considered an invitee where the possessor of land extends an invitation to enter the land to the public in general. *Carter,* 896 S.W.2d at 928. An invitation was extended to the general public to enter Forest Park. Additionally, an invitation was issued to the general public to use the golf course, conditioned upon payment of the greens fees. However, any deviation from the scope of the invitation can reduce the status of an entrant and the duty of the possessor. *Taylor v. Union Elec. Co.,* 826 S.W.2d 57 (Mo.App.1992). "Deviation from an invitation occurs when the entrant acts in a manner inconsistent with the scope of an express or implied invitation, thereby demonstrating a change in relationship between that person and the possessor." *Id.* While Hogate is correct in his argument that there is substantial evidence to support the conclusion that he was an invitee to the park, the issue we must decide is whether he exceeded the scope of any invitation which might have been issued to him to enter the golf course.

The Missouri Supreme Court has determined that, "[t]he use of property for purposes outside the scope and purpose of the invitation, or for which the property was not designed to be used, and the use of property by an invitee for purposes for which the possessor could not reasonably have anticipated the property would be so used, imposes no duty on the owner or person in charge of the premises." *Gruetzemacher v. Billings,* 348 S.W.2d 952, 958 (Mo.1961). Here, AGC's leased property was to be used for the purpose of golf. AGC extended an invitation to the general public to walk, drive golf carts, and play golf on the land. Hogate clearly exceeded the scope of this invitation when he rode his bicycle onto the fairway of the course. Hogate testified that there are paved paths in Forest Park on which to ride bicycles. Additionally, there were golf cart paths and a maintenance road available on which Hogate could ride his bicycle. However, Hogate did not choose to utilize these paths, but rather he chose to ride across the fairway of the golf course. Hogate testified that he was aware that a golf course was present on Art Hill, and that he had seen golfers playing there in the past. The fairway was maintained differently from the surrounding area and made obvious by more closely mowed grass. When Hogate saw golfers playing, he would not ride across. Bicycle riding is not an accepted purpose on a fairway of a golf course.

We next consider whether Hogate came within any exceptions to the general rule that a possessor of land owes no duty to trespassers on the property. *Seward v. Terminal R.R. Ass'n of St. Louis,* 854 S.W.2d 426, 428 (Mo. banc. 1993). One exception is contained in the Restatement (Second) of Torts § 335 (1965), and is recited in the *Seward* case. It states:

"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability

for bodily harm caused to them by an artificial condition on the land, if

 (a) the condition

 (i) is one which the possessor has created or maintains and

 (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

 (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

 (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved." *Id.* at 429.

It is questionable whether the above provision of the restatement has been adopted by Missouri courts. *Id.* However, regardless of the adoption of the provision, the evidence in the present case did not show that AGC knew or should have known of constant trespassing on the fairway of the fourth hole. The evidence only showed that AGC was aware of the use of Art Hill, a portion of Forest Park, by the general public. Jeff Raffelson, the general manager of Forest Park, and an employee of AGC, testified that he was aware that Art Hill was used by the general public. He had knowledge of several different activities taking place on Art Hill, and he had seen some bicyclists riding on Art Hill. However, he had no knowledge of any such activities taking place on the golf course itself. Moreover, no evidence was introduced to indicate any knowledge of people riding bikes on the golf course. The only evidence related to knowledge of bicyclists on Art Hill. Thus, it was not established that AGC knew, or should have known, of any intrusion onto the golf course by bicyclists, and the exception does not apply. Additionally, the rope was not a condition which would be likely to cause death or bodily harm to trespassers, and AGC had

no reason to believe that the rope would not be discovered by trespassers.

The court in *Seward* continued to state that in determining what the possessor of land "should know" concerning trespassers based upon "facts within his knowledge," a possessor is required "only to draw reasonably correct conclusions from data known to him, and [the possessor] is not required to exercise a reasonable attention to his surroundings or to make any inspection or investigation in regard to them." *Seward*, 854 S.W.2d at 430, (*quoting* Restatement (Second) of Torts § 334, comment c (1965)). Although the evidence shows that AGC was aware of the presence of bicyclists on Art Hill, the record does not indicate that AGC should have reasonably drawn the conclusion that the bicyclists would ride on the golf course as a result of their use of Art Hill.

Hogate relies upon a federal court plurality opinion in *Daisey v. Colonial Parking, Inc., et al.*, 331 F.2d 777 (D.C.Cir. 1963) for the proposition that where private land is adjacent to public land, and is indistinguishable from the public land, the possessor of the private land owes people entering it the same duty as that owed to an invitee. We believe this is an overstatement of the court's decision in *Daisey*. In *Daisey*, plaintiff walked across an alley to a concrete walk at night and with a drizzle which lowered visibility. As she crossed the alley, she tripped over a chain which was hung from two posts and was injured. The posts and chain were part of a parking area under the control of defendants. This parking area was between the alley and the concrete walk. The court determined that "the minimal duty of care to trespassers at common law *may not* apply where the premises entered abut on a public way." *Id.* at 778 (emphasis added). The court also noted that people using the walk to enter or leave the

alley could "hardly do so without crossing the parking area." *Id.* at 779. In this circumstance, the court found that where trespassers are not only reasonably foreseeable, but also reasonably expected, a possessor of land may be required to exercise due care to keep trespassers out, warn them of hazards, or otherwise protect them. *Id.* at 780.

We do not believe such a duty is warranted in the instant case. Here, it was not necessary for people to enter the golf course in order to proceed through the park. As discussed above, there were paved paths, maintenance roads and golf cart paths upon which people could travel. Additionally, the evidence, viewed in the light most favorable to the verdict, does not establish that trespassers could be reasonably foreseen or expected on the golf course. While Jeff Raffelson, the general manager of Forest Park golf course, testified that he had seen "some bicyclists" on Art Hill, no testimony was presented that he saw bicyclists on the golf course itself at any time. Additionally, Hogate testified that he rode his bike down Art Hill and saw others ride their bikes down Art Hill "all the time." However, this did not establish any notice to AGC that people rode bicycles on the golf course itself. Hogate exceeded the scope of any invitation issued to him by AGC and as such his status as an invitee on the golf course was reduced to that of a trespasser. Therefore, AGC owed him no duty. Point granted.

In its second and final point relied on, AGC asserts that the trial court erred in denying its motion for judgment notwithstanding the verdict because Hogate failed to make a submissible case of premises liability. AGC claims that the yellow rope used on the course was an open and obvious condition as a matter of law, and AGC did not know and had no reason to know that the rope posed a risk of harm to people in the area, including Hogate.

We do not need to determine whether the yellow rope was open and obvious because Hogate was a trespasser on AGC's golf course. A consideration of whether a condition is open and obvious is one necessary when the relationship between the possessor of land and the entrant is that of invitor and invitee. However, in the present case, we hold that Hogate exceeded the scope of any invitation to him as an invitee on the golf course and was therefore a trespasser to whom AGC owed no duty

The judgment of the trial court is reversed.

MARY R. RUSSELL, P.J., dissents.

CHARLES B. BLACKMAR, SR. J., concurs.

MARY R. RUSSELL, Presiding Judge, dissenting.

I respectfully dissent in that I disagree with the majority's holding that Robert Hogate ("Hogate") exceeded the scope of any invitation to him as an invitee and that he was a trespasser to whom American Golf Corporation ("AGC") owed no duty. I find the evidence was such that a reasonable juror could have found that AGC owed a duty to Hogate as an invitee or as a foreseeable trespasser.

As stated by the majority, the standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict ("JNOV") is whether the plaintiff has made a submissible case. *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 338 (Mo. App.2000). A submissible case requires substantial evidence for every fact essential to liability. *Holley v. Caulfield,* 49 S.W.3d 747, 750 (Mo.App.2001). Substantial evidence is that which, if true, has

probative force upon the issues, and from which the trier of fact can reasonably decide a case. *Coggins,* 37 S.W.3d at 338. Whether evidence is substantial and whether inferences drawn are reasonable is a question of law. *Id.* at 339.

In determining whether a plaintiff has made a submissible case, we view the evidence in the light most favorable to the plaintiff, and give the plaintiff the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Holley,* 49 S.W.3d at 750. We presume that the plaintiff's evidence is true and disregard any of the defendant's evidence that does not support the plaintiff's case. *Id.; Coggins,* 37 S.W.3d at 339.

Moreover, we will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Coggins,* 37 S.W.3d at 339. If reasonable minds can differ on the question before the jury, we will not disturb the verdict. *Id.* We will not, however, supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Id.* Finally, we note that granting a motion for JNOV is a *drastic* action, and it should only be done when reasonable persons could not differ on the correct disposition of the case. *Id.* (emphasis added).

AGC argues that it did not owe Hogate a duty because he exceeded the scope of his invitation in that he did not pay to use the golf course and, as a result, was an unforeseeable trespasser on the fairway when he was injured. Although Hogate acknowledges that he was aware that part of the golf course was located on Art Hill, he counters that he was an invitee because his use of the hill was among the many uses for which Forest Park was open to the public and because nothing alerted him that he had left the park and entered an area exclusively occupied by the golf course and reserved for its paying customers. *See Carter v. Kinney,* 896 S.W.2d 926, 928–29 (Mo. banc 1995).

The facts as viewed in the light most favorable to the verdict are as follows. The fourth fairway runs across Art Hill in Forest Park, which is open to the general public for many activities.[1] At the time of his accident in early April 1996, Hogate testified there were no golfers on the fourth hole, but he saw people engaged in many activities on Art Hill, including playing football, walking, flying kites, fishing, playing with their pets, and sitting on blankets. When his bicycle hit the rope alongside the fairway, Hogate had just bicycled down Art Hill and across the fourth fairway.

No fence or other type of marker or border indicated to park patrons where the public property ended and the golf course began. AGC claimed at trial that two signs at the top of Art Hill alerted park patrons that they were in proximity to the golf course. The signs were located near the top of the hill, approximately two-tenths of a mile from each other. They were near two circular driveways on either side of the art museum, between the museum and the lake. The photographs presented to the jury depicted heavily rusted signs warning that a golf course lay ahead and restricting the course to golfers with paid permits. Hogate's testimony indicated that one of the signs was bent inward so as to obscure the text. He testified that he had not seen the signs on the day of his accident, but he did see them approximate-

---

1. During voir dire, many venirepersons indicated familiarity with Art Hill and stated what activities they had participated in or had observed on the hill.

ly a month later when he returned to photograph the scene.

From this evidence, reasonable jurors could conclude that Hogate was an invitee as, at the time of the accident, he was still in the park in a public area. He testified that he did not see the golf course's signs and that he saw other people on Art Hill involved in many different activities aside from golf. There was no evidence of a barrier or other demarcation that could have alerted Hogate that he was entering an area forbidden to him as a cyclist.

Furthermore, the evidence supports a finding that the ropes and stakes did not constitute an open and obvious condition on the land so as to absolve AGC from liability. Hogate testified that, although he was keeping a careful lookout as he was riding, he did not see the ropes when he looked down Art Hill. He said he did not see the ropes until he and his bike were entangled in them.

AGC's general manager at Forest Park, Jeff Raffelson ("Raffelson"), explained AGC's maintenance policy regarding ground repair ropes. He said AGC's policy required all ground repair stakes to be painted at the top. The stakes were to have holes drilled in them approximately four inches from the top where the rope would be strung, and the ropes were to hang between the stakes at approximately two feet above the ground.

Raffelson admitted that most of the stakes near the accident site were unpainted and that none of the stakes had holes drilled through them. The ropes were wrapped around the stakes as low as one inch from the ground in some places. Further, he testified that the rope at the accident site was touching the ground in some places and was eight inches off the ground at most, which was inconsistent with AGC's maintenance policy.

The jury saw pictures of the construction and saw a piece of the yellow rope that had been strung to the wooden stakes. The jurors could have reasonably concluded the ropes and stakes did not present an open and obvious danger to someone bicycling at 15 to 22 feet per second. The jury evidently believed Hogate's testimony and found that his injuries were not a result of his negligence as it assessed AGC with 100 percent of the liability and did not assess him with any comparative fault in the $100,000 judgment.

Assuming that Hogate was not an invitee, I find that he was still owed a duty by AGC as he was a foreseeable trespasser on the golf course at the time of his injury. Generally, a landowner owes no duty to a trespasser. *Seward v. Terminal R.R. Ass'n of St. Louis*, 854 S.W.2d 426, 428 (Mo. banc 1993). In order to impose liability on a landowner for his injuries, a trespasser must demonstrate that he falls within an exception to the general rule. *Id.* The rule precluding liability for trespassers is not based on the wrongful nature of the trespasser's conduct, rather it is based on the landowner's inability to foresee the trespasser's presence and protect him from injury. *Id.* As such, the exceptions to the general rule arise from facts indicating that the landowner should reasonably anticipate harm to trespassers. *Id.*

Section 335 of the Restatement (Second) of Torts (1965) contains a pertinent exception to the general rule. Although it is unclear whether this section has been rejected or accepted in Missouri, *Seward*, 854 S.W.2d at 429, the majority opinion discusses its applicability. The exception provides that possessors of land who are aware of constant trespassers are liable to them in some circumstances for bodily harm caused by artificial conditions. Whether AGC owed these trespassers a

duty depends upon its awareness of their existence on the golf course.

Raffelson agreed that the golf course's fourth hole was unique as compared to the rest of the course in that it was located in a highly trafficked area of the park. Raffelson admitted that people routinely engaged in a myriad of activities on Art Hill, including flying kites, picnicking, balloon racing, jogging, walking, and bicycling. In fact, when Raffelson was asked, "[AGC employees] certainly knew the uses being made of Art Hill, didn't they?" he replied, "Yes, we did."

Based on the testimony and photographic evidence presented to the jurors, they could have reasonably inferred from the location of the signs on Art Hill that AGC purported to control the entirety of the hillside, especially given that no evidence was introduced as to the boundaries of its leasehold. Raffelson's admission of his knowledge of the various activities on Art Hill, which the signs proclaimed were part of the golf course, indicates that AGC was aware of the constant non-golfers trespassing on the course at the fourth fairway.

Jurors could have reasonably determined that AGC's failure to follow its safety protocol resulted in an unsafe artificial condition that was likely to cause death or serious bodily harm to park patrons, that AGC failed to warn them of this condition, and that they were unlikely to discover the condition without a warning. Furthermore, although a comparative fault instruction was submitted to the jurors, they attributed no fault to Hogate. As such, there was sufficient evidence for the jurors to conclude Hogate was a foreseeable trespasser who was owed a duty by AGC such that it was liable for his injuries.

I find that AGC owed a duty to Hogate and that it breached that duty. The trial court properly denied AGC's motion for JNOV. The judgment of the trial court should be affirmed.