

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JEFFREY ALAN HEBERLIE, | ) | ED103702 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1322-CC09315 |
| | ) | |
| HARRIMAN OIL COMPANY, LLC, | ) | Honorable Joan L. Moriarty |
| | ) | |
| Respondent. | ) | Filed: September 6, 2016 |

## Introduction

Appellant Jeffery Heberlie (Heberlie) appeals the trial court's summary judgment in favor of Respondent Harriman Oil Company, LLC (Harriman Oil), on Heberlie's claim of malicious prosecution. The underlying suit prompting Heberlie's claim was initiated by Harriman Oil against Heberlie for collection of a debt. Heberlie argued Harriman Oil knew such debt had been discharged by bankruptcy proceedings, thus Heberlie filed the present suit for malicious prosecution. Because the undisputed facts established Heberlie could not prevail on this claim, we affirm.

## Background

Heberlie was a member of a corporation called Corner Market Operating Team, LLC (Corner Market LLC), with one other member, Thomas Baker (Baker). Corner

Market LLC operated a gas station and market called the Corner Market (Corner Market). On October 26, 2007, Corner Market LLC entered into a Petroleum Product Sales Agreement (Sales Agreement) with Harriman Oil to purchase fuel. Heberlie and Baker both signed the Sales Agreement as personal guarantors for Corner Market LLC under the agreement.

Over the period of time during which Corner Market LLC purchased fuel from Harriman Oil, Harriman Oil would deliver the fuel and then electronically withdraw funds for the fuel from Corner Market LLC's bank account at First State Community Bank. Corner Market LLC maintained this bank account solely for the purpose of paying Harriman Oil for fuel. No other vendors withdrew funds from this account, and Corner Market LLC did not use this account to pay for other services. Corner Market LLC used a second bank account at Bank Star of the Leadbelt for daily deposits and to pay other vendors.

On Friday, May 16, 2008, Heberlie unilaterally decided to close the Corner Market upon advice from his attorney. Heberlie did not inform Baker of this decision because he believed Baker was planning to remove himself as a guarantor from the Sales Agreement on Monday, May 19, 2008. Heberlie contacted local police to let them know he would be closing the Corner Market permanently on Sunday, May 18, 2008. Heberlie decided to liquidate all of Corner Market's merchandise over the weekend.

Additionally, Harriman Oil delivered multiple loads of fuel to the Corner Market that weekend. Heberlie had ordered more fuel than usual for the weekend. Invoices from May 15 and 16, 2008, totaled $34,660.77. Harriman Oil made an additional delivery on May 17, 2008, and the invoice for that delivery was in the amount of $15,612.54. On

Sunday, May 18, 2008, sometime between 5 p.m. and 8 p.m., Heberlie also lowered the price of gasoline at least 50 cents lower than other gas stations in town, in order to sell as much as possible. Heberlie knew that the gasoline had been provided via credit by Harriman Oil and that Corner Market LLC would owe Harriman Oil payment for the gasoline.

When Heberlie closed the Corner Market on Sunday, May 18, 2008, he took all of the money from sales over the weekend home with him. On Monday, May 19, 2008, Heberlie deposited all of the money in the bank account with Bank Star of the Leadbelt. In doing so, Heberlie knew there would not be sufficient funds in the First State Community Bank account to pay for the gasoline from the weekend. When Harriman Oil attempted to withdraw money from the bank account at First State Community Bank for these invoices, the requests were returned due to insufficient funds in the account.

Heberlie used the money from the weekend to pay other vendors besides Harriman Oil. He had considered the responsibilities he had regarding payment of vendors with the closing of the Corner Market and decided he would "just do the best that he could." He did not pay any of the money owed to Harriman Oil. In October of 2008, Heberlie received a letter from Harriman Oil demanding payment regarding a check that was returned for insufficient funds in the amount of $19,831.48. Heberlie's attorney responded to the letter, stating that Heberlie had no individual liability for debts of the Corner Market. Heberlie did not send payment.

On June 18, 2010, Heberlie filed for personal bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri. Heberlie did not list Harriman Oil as a creditor, and Heberlie did not

3

apprise Harriman Oil of the bankruptcy filing at that time. The case was designated a "no asset" case. On September 28, 2010, the Bankruptcy Court entered its Order Discharging Debtor (Bankruptcy Order).

On August 3, 2011, Harriman Oil filed a complaint in the United States District Court for the Eastern District of Missouri against both Baker and Heberlie, alleging breaches of personal guaranty against each of them. The complaint alleged that Corner Market LLC had failed to pay Harriman Oil for gasoline under the Sales Agreement in the amount of $138,583.01. Shortly after Harriman Oil filed suit, Heberlie's attorney informed Harriman Oil of Heberlie's Bankruptcy Order and requested that Harriman Oil dismiss the count against Heberlie.

On March 3, 2012, Harriman Oil filed an amended complaint, adding a claim of fraud against Heberlie. Harriman Oil alleged that Heberlie purposely incurred debt with Harriman Oil, never intending to pay it, for the purpose of benefiting himself and deceiving and harming Harriman Oil. Heberlie subsequently moved to dismiss Harriman Oil's claims with prejudice. Harriman Oil failed to file a timely response, and the court granted Heberlie's motion, dismissing Harriman Oil's claims against Heberlie with prejudice.[1]

On October 24, 2012, Heberlie filed the lawsuit that is the subject of this appeal. Heberlie's petition in the circuit court contained a single claim of malicious prosecution, alleging that Harriman Oil's action against Heberlie for breach of personal guaranty lacked probable cause because Harriman Oil failed to give Heberlie notice of the failure to perform under the Sales Agreement. Additionally, Heberlie alleged that Harriman Oil lacked

---

[1] Harriman Oil did obtain a judgment against Baker in the amount of $217,582.48.

4

probable cause to continue its prosecution of its claims against Heberlie after Heberlie informed Harriman Oil of his Bankruptcy Order.

Harriman Oil moved for summary judgment. The trial court found that there was no factual dispute, and that the undisputed facts established Harriman Oil had probable cause to bring its claim of fraud. Thus, the trial court granted summary judgment in favor of Harriman Oil. This appeal follows.

## Standard of Review

Our review of summary judgment is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co., 854 S.W.2d 371, 376 (Mo. Banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. Id. We take all facts set forth by affidavit or otherwise in support of the motion as true unless contradicted by the non-moving party's response, and we accord the non-movant the benefit of all reasonable inferences from the record. Id. The propriety of summary judgment is purely an issue of law. Id.

## Discussion

Heberlie raises four related points on appeal, all arguing the trial court's summary judgment was improper.[2] Because of the nature of our review of a claim for malicious prosecution in the context of summary judgment, we address them together as we review the propriety of the trial court's judgment here. We find the trial court's summary judgment was proper.

---

[2] Specifically, Heberlie argues in Point I that the trial court erred in granting summary judgment because his debt was discharged by the Bankruptcy Order. In Point II, Heberlie argues that the trial court erred in granting summary judgment because Harriman Oil failed to seek a judicial determination that Heberlie's debt to Harriman Oil was not discharged. In Point III, Heberlie argues summary judgment was improper because there were no undisputed facts that Heberlie committed fraud. Finally, Heberlie argues in Point IV that the trial court erred in granting summary judgment because Harriman Oil failed to notify Heberlie of Corner Market LLC's defaulted payments.

5

Under Rule 74.04(c),[3] where a "defending party" moves for summary judgment, one of the ways he or she may establish a right to judgment is "by showing . . . that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements." ITT Commercial Fin. Corp., 854 S.W.2d at 381. Where there is no genuine dispute as to the facts underlying this right to judgment, summary judgment is proper. Id.

Here, Heberlie's claim was for malicious prosecution. The elements of this claim are: "(1) the commencement of a judicial proceeding against the plaintiff; (2) the instigation of the suit by the defendant; (3) the termination of the proceeding in [the] plaintiff's favor; (4) the absence of probable cause for the suit; (5) malice by the defendant in instituting the suit; and (6) resulting damage to the plaintiff." Joseph H. Held & Associates, Inc. v. Wolff, 39 S.W.3d 59, 62-63 (Mo. App. E.D. 2001) (citing Stafford v. Muster, 582 S.W.2d 670, 675 (Mo. banc 1979)). Because actions for malicious prosecution are not favored, a plaintiff must provide "strict and clear proof" of each of these elements. Holley v. Caulfield, 49 S.W.3d 747, 750-51 (Mo. App. E.D. 2001).

Thus, as the defending party moving for summary judgment, Harriman Oil could establish a right to judgment as a matter of law by showing that Heberlie would be unable to produce evidence sufficient to allow the trier of fact to find the existence of *any one* of the elements of malicious prosecution by strict and clear proof. See id. at 62 (quoting ITT Commercial Fin. Corp., 854 S.W.2d at 381). The trial court focused on the fourth element, the absence of probable cause, finding that the undisputed facts established that Harriman

---

[3] All rule references are to Mo. R. Civ. P. (2016) unless otherwise indicated.

6

Oil had probable cause to bring its claim of fraud, and therefore Heberlie would not be able to establish the absence of probable cause.[4] See Wolff, 39 S.W.3d at 63-64 (undisputed facts demonstrated plaintiffs could not show lack of probable cause for entire proceeding). Thus, the trial court determined summary judgment in favor of Harriman Oil was proper. We agree.

First, the underlying proceeding may give rise to only one claim of malicious prosecution. Id. at 63. Thus, regarding the element of lack of probable cause, "the plaintiff must prove lack of probable cause for the *entire* proceeding." Id. The burden is not met by showing a lack of probable cause for one claim where others are supported by probable cause. Id. Rather, to satisfy this element, the plaintiff must show a lack of probable cause for each claim. Id.

Accordingly, to satisfy the element of lack of probable cause here, Heberlie would have to establish that Harriman Oil lacked probable cause to bring both its claim of breach of personal guaranty *and* its claim of fraud. Heberlie argued extensively that, once informed of Heberlie's Bankruptcy Order and the discharge of his debts, Harriman Oil no longer had probable cause to continue its suit for collection of the debt. However, Harriman Oil added a claim of fraud against Heberlie. Thus, even assuming *arguendo* that this extinguished probable cause regarding Harriman Oil's claim of breach of personal guaranty,[5] Heberlie still would have to show Harriman Oil lacked probable cause to bring its fraud claim.

---

[4] Harriman Oil also argued Heberlie would be unable to produce evidence sufficient for the trier of fact to find the element of malice, but we need not discuss it here in light of our conclusion regarding the element of lack of probable cause.

[5] Harriman Oil does not concede that it lacked probable cause to continue its claim of breach of personal guaranty, arguing that had it prevailed on the fraud claim, Heberlie's debt would not have been discharged by the bankruptcy proceeding under 11 U.S.C. § 523(a)(3)(B), for fraud. However, we need not determine this issue because Harriman Oil's probable cause regarding its fraud claim alone defeats Heberlie's claim of

7

Heberlie's sole argument regarding the fraud claim is that Harriman Oil failed to show uncontroverted facts that Heberlie committed fraud. However, this was not Harriman Oil's burden. As stated above, in order to be entitled to summary judgment, Harriman Oil needed only to show by undisputed facts that Heberlie would be unable to establish a lack of probable cause regarding Harriman Oil's claim of fraud.

Thus, our final question is whether Harriman Oil did so by establishing that it in fact had probable cause to bring its claim of fraud against Heberlie. "The Missouri Supreme Court has defined probable cause for the institution of a civil action to consist of: (1) the plaintiff's belief in the facts alleged, (2) based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus (3) a reasonable belief that under the facts the claim may be valid under the applicable law." Holley, 49 S.W.3d at 751. Simply put, probable cause is "a reasonable belief in the facts alleged, plus a reasonable belief that the claim may be valid." Id.

In its complaint in federal court, Harriman Oil claimed that "Heberlie made the calculated and purposeful decision to incur additional debt with Harriman [Oil], liquidate Corner Market[ LLC]'s assets, and shield the proceeds of that liquidation from Harriman [Oil] for personal gain." The complaint also alleged that when Heberlie ordered the fuel for the weekend that he closed the Corner Market, "Heberlie made fraudulent representations that he intended to pay for the fuel ordered, but in fact, he never intended to pay Harriman [Oil] the amounts owed under the [Sales] Agreement." Harriman Oil claimed that Heberlie's actions were meant to deceive and harm Harriman Oil for Heberlie's benefit, and that Harriman Oil was directly harmed thereby.

---

malicious prosecution. Additionally, this renders the issue of which party had a duty to reopen the bankruptcy proceeding to determine whether Heberlie's debt was discharged irrelevant.

In its motion for summary judgment, Harriman Oil made substantially similar allegations of fact, and supported these allegations with exhibits, affidavits, and depositions. Heberlie disputed several of these factual assertions, which Heberlie supported by his own affidavit. However, the trial court rejected this affidavit because it contained inadmissible hearsay and thus did not meet the requirements of Rule 74.04(e). Heberlie admitted the following facts, however:

- Heberlie lowered gas prices in order to get rid of as much gas as possible.

- Heberlie knew, at the time of his reduction of gas prices, that their past practice was that Harriman Oil would be paid for the fuel it provided subsequent to it being delivered and that the fuel was being provided via credit.

- Heberlie knew that by getting rid of the gas, [Corner Market LLC] would owe Harriman Oil for the fuel that was being sold.

- By depositing the weekend funds into the Bank Star of the Leadbelt account, . . . Heberlie immediately knew that Harriman Oil would be drafting from an insufficiently funded account.

The trial court determined that the undisputed facts would warrant a reasonable person to have an honest belief that pursuing a claim of fraud would be proper. Essentially, these facts could lead a trier of fact to conclude that Heberlie intentionally misrepresented that he would pay for the gasoline by ordering the fuel consistent with past practices of the parties, and that Harriman Oil justifiably relied on this misrepresentation and was injured thereby. See Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 131-32 (listing elements of fraud claim). This does not mean that Harriman Oil would have been able to successfully prove each of the elements of fraud, but Harriman Oil did not have to make that showing. The facts here are sufficient to show that Harriman Oil had a reasonable belief in the validity of its fraud claim. See Holley, 49 S.W.3d at 751. Thus,

9

the undisputed facts in the record show Harriman Oil had probable cause to pursue its claim of fraud against Heberlie.

Harriman Oil met its burden on summary judgment to show by undisputed facts that Heberlie would be unable to produce sufficient evidence to establish one of the elements of malicious prosecution; namely, lack of probable cause. See ITT Commercial Fin. Corp., 854 S.W.2d at 381. Thus, the trial court did not err in granting summary judgment in favor of Harriman Oil.

## Conclusion

The judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., Judge

James M. Dowd, P.J., concurs.
Kurt S. Odenwald, J., concurs.

10